## Mabel E. Goodrich's Appeal from Probate.

New Haven Co., June T., 1888. Park, C. J., Carpenter, Pardee, Loomis and Beardsley, Js.

By a will executed in 1881 estate was bequeathed to *B*, "in trust for the Protestant Episcopal Society of Branford, the income to be given to the poor of the society." One witness to the will, and the wife of another, were at the time of its execution members of that society. By statute a bequest to an attesting witness was void. Held that the bequest was not affected by the fact, either that the witness and the wife might become entitled as poor of the society to the help provided for by the bequest, or that as members of the society they had an inter-est in its receiving the bequest.

The rule that the validity of a bequest to any society or community shall not be affected by the fact that an attesting witness is a member of it, has since been made matter of statute. Gen. Statutes, § 539.

There was in the town of Branford but one religious association organized under and subject to the constitution and canons of the Protestant Episcopal Church in the diocese of Connecticut, and the name of this was Trinity Parish. Held that this parish was the society intended.

Under the laws of the state Trinity Parish in the town of Branford is a corporation; and by the canons and rubrics of the Protestant Episcopal Church in the diocese of Connecticut its rector is its duly appointed agent, with power and under obligation to determine what persons in the parish are poor and shall be relieved from money given to the parish for that purpose.

And held that, as the use in the present case was charitable within the statute, and there were beneficiaries who as a class could be identified, and the parish could through its rector select the individuals, the bequest was valid.

And held not necessary that there should have been at the ·death of the testator any members of the class for whose benefit he made the bequest. The court would take notice of the fact that the poor are always to be found.

The law therefore would not regard such a charity, which must go into operation as soon as there should be any person in the parish needing relief, as so long postponed as to offend the law against perpetuities.

And held that the trustee was to hold the principal of the fund; also the income, until he should be required to expend it for the relief of the poor of the parish, upon the determination and request of its rector; with liability to account.

If the parish should neglect to point out the beneficiaries, the court would appoint another instrumentality, upon the principles which would govern it in appointing a trustee.

[Argued June 20th—decided October 9th, 1888.]

APPEAL from sundry decrees of a probate court based upon the validity of a certain charitable bequest in the will of Eli Goodrich, deceased; taken to the Superior Court in New Haven County. Facts found and case reserved for the advice of this court. The case is sufficiently stated in the opinion.

*S. E. Baldwin* and *J. E. Russell*, for the appellant.

1. It is provided by a statute enacted in 1807 and in force at the time of the death of the testator, that "every devise or bequest given in any will to a subscribing witness shall be void." In *Clark* v. *Hoskins*, 6 Conn., 110, it is said that "this law is a remedial one and should be liberally expounded, whether the interest of the subscribing witness arises directly or by necessary consequence; the mischief is the same, and to suppress it the same remedies must be applied." *Fortune* v.

*Buck*, 23 Conn., 9. "A gift to a trustee upon trusts declared by parol in favor of an attesting witness is void." *Sidgreaves* v. *Brewer*, L. R. Cha., Div., 594. If this bequest is good the attesting witness who is a member of the Protestant Episcopal Society may possibly receive the entire income of the estate in violation of the statute. If the church connected with the society is intended to have any interest in the residuary estate, then the wives of the two attesting witnesses act a part in invalidating the residuary clause. *Drake's Appeal from Probate*, 45 Conn., 20.

2. It becomes necessary to show the distinction between a *church* and *society*. In *Silsby* v. *Barlow*, 16 Gray, 330, the words *church* and *society* are thus defined:—"A church is understood to be a body of persons associated together for the purpose of maintaining Christian worship and ordinances. A religious society is a body of persons associated together for the purpose of maintaining religious worship only, omitting the sacraments." "A devise to a church is a devise to the communicants composing the church, but a church is not a legal body and is incapable of taking." *Lockwood* v. *Weed*, 2 Conn., 287. A devise to a society is a devise to the members who compose the society. The word *society* is not a synonym for *church*. Bouvier's Law Dict., *in verbum*. "A profession of belief is a requisite for any religion." 2 Wait's Actions & Defenses, 257; *Den* v. *Bolton*, 7 Halst., 206. Members of religious societies make no such declarations of belief. A well defined line separates members of the *church* from members of the *society*. *First Congregational So.* v. *Atwater*, 23 Conn., 42; *Watson* v. *Jones*, 13 Wall., 679; *Stebbins* v. *Jennings*, 10 Pick., 172. Where there is no ambiguity in the language of a will, whatever we may conjecture respecting the intent of the testator, we are not at liberty to presume one contrary to the legal effect of the words he has used. *Wheeler* v. *Walker*, 2 Conn., 200.

3. There is no person in existence for whose benefit the residuary gift mentioned in this will can be applied. The Protestant Episcopal Society of Branford has never been known during the hundred years of its existence to have had

a poor person among its members, or any rules or regulations concerning the poor. The trustee could find no poor to distribute funds to; it is not certain that such poor will ever exist; and as the will does not provide for the expenditure of the annual income, it may remain forever in the hands of trustees inalienable, and hence a perpetuity may exist in the trustees, which the law will not allow. *In re White's Trusts*, L. R., 33 Ch. Div., 453; *Jocelyn* v. *Nott*, 44 Conn., 59; Gray on Perpetuities, § 606. The poorest of a wealthy class are not included in a gift to the poor. *Atty. Gen.* v. *Duke of Northumberland*, L. R., 7 Ch. Div., 745. "There is no distinguishing between the degrees of poverty." 2 Jarman on Wills, 668. "It is a well settled and established rule that where a gift to a charitable use is so indefinite as to be incapable of being executed by a judicial decree, the representatives of the donor must prevail over the charity." *Prichard* v. *Thompson*, 95 N. York, 76. The court cannot execute a power in default of an appointment. If the donee executes the power and disposes of the property, or designates or selects the persons who are to take under the gift, it goes as directed, and there is no great room for doubt or question; but if the donee refuses or neglects to execute the power it becomes a grave inquiry whether the persons in whose favor the power might have been exercised have any interest in the property or any remedy for the non-exercise of the power by the first taker or donee. Hence it follows that a trust to be valid must be so specific that the beneficiary thereof can come into court and demand its enforcement. 1 Perry on Trusts, 3, 19, 327; *Adye* v. *Smith*, 44 Conn., 71; *Holland* v. *Alcock*, 108 N. York, 312. "Generally speaking, however, to a suit against trustees to enforce the execution of a trust, cestuis que trust claiming a present interest directly opposed to those of the plaintiff should be made parties, in order that they may have an opportunity themselves to defend their rights and not be obliged to rely upon the defense made by the trustees, or to resort to a subsequent suit against the trustees or the plaint-

iff, or take the risk of being bound by a decree rendered in their absence." *Sears* v. *Hardy*, 120 Mass., 529.

4. The bequest is void for uncertainty. "It seems now established that the court will only recognize the validity of trusts which it can either itself execute or can control when in process of being executed by trustees." 1 Jarman on Wills, 407; *Nash* v. *Morley*, 5 Beav., 177. "The courts of America have generally declined, in the absence of legislative authority, to administer these indefinite gifts to charity, or religion, or education, or public utility, unless there was a trustee appointed by the testator to exercise his discretion in applying the gift to particular objects or persons." 2 Perry on Trusts, 719. See also 1 Jarman on Wills, 407; *Heiss* v. *Murphy*, 40 Wis., 276; *Schmucker's Estate* v. *Reed*, 61 Mo., 592; *Maught* v. *Getzendanner*, 65 Md., 527; *Fontaine* v. *Thompson*, 80 Va., 229; *Brown* v. *Caldwell*, 23 W. Va., 187; *Trippe* v. *Frazier*, 4 Har. & J., 446; *Dashiell* v. *Atty. Gen.*, 5 id., 392; *Beal* v. *Drane*, 25 Geo., 430; *Nichols* v. *Allen*, 130 Mass., 211; *Kent* v. *Dunham*, 142 id., 216. "To make a will good in this state, of a charitable bequest to uncertain persons of a class, when given to a trustee, the will itself must provide a limited discretionary power of selection of the persons constituting that class." *White* v. *Fisk*, 22 Conn., 50; *Treat's Appeal from Probate*, 30 id., 113; *Adye* v. *Smith*, 44 id., 70; *Hughes* v. *Daly*, 49 id., 34; *Lawson* v. *Fairfield*, 50 id., 513; *Coit* v. *Comstock*, 51 id., 379; *Tappan's Appeal from Probate*, 52 id., 412; *Bristol* v. *Bristol*, 53 id., 257; *Beardsley* v. *Selectmen of Bridgeport*, id., 489; *Storrs Agricultural School* v. *Whitney*, 54 id., 342.

*L. Harrison* and *E. Zacher*, for the appellees.

PARDEE, J. Eli Goodrich of Branford died in August 1882, leaving a will made in 1881, the seventh clause of which is as follows:

"After the death of my said wife I give, devise and bequeath all the residue of my estate, of whatsoever it may consist, and not otherwise disposed of, to Edwin E. Black-

stone of said town of Branford, in trust for the Protestant Episcopal Society of said town of Branford, the income of said estate to be given to the poor of said society."

The will was duly admitted to probate in 1882. The executor filed his final account on September 18th, 1885, and on the 30th day of the same month paid to Edwin E. Blackstone, trustee, the residue of the estate.

On March 16th, 1887, Mabel E. Goodrich, a minor, a granddaughter and heir at law of the testator, by her guardian presented in the probate court for the district of Branford her appeal to the Superior Court, from the decree of the probate court passed on the 18th day of September, 1885, accepting the account of the executor; also from its decree passed on the 25th day of September, 1885, appointing Edwin E. Blackstone trustee, and delivering to him as such trustee the residue of said estate; also, from its decree passed on December 11th, 1886, accepting the account of said trustee.

Among the reasons of appeal are the following :—

" That J. Atwood Linsley, one of the witnesses to the will, was, at the time of the death of the testator, a member of the Protestant Episcopal Society of said Branford. The devise to said society is therefore void by statute.

" That the wife of said J. Atwood Linsley, and also the wife of Henry D. Linsley, one of the witnesses to the will at the time of the execution of the will, and also at the time of the death of the testator, were both members of the Protestant Episcopal Church of said Branford, the church then and ever since existing in sole connection with said society. Said devise is therefore void.

" That said society has never had a poor person, nor a class of persons known as the poor, nor any rules or regulations concerning the poor. The poor have never had an existence there.

" The will does not provide any mode of selecting the poor of the society, by whom or to whom the income or any portion of said residuary estate shall be paid.

" That said society has never accepted of said devise and legacy.

" That under an erroneous construction of said clause of the will, the probate court appointed and accepted said Edwin E. Blackstone as trustee of said estate, and has allowed him to receive and still retain the residuary property of said estate, one half of which property should have been distributed to the appellant as an heir at law.

" That said trustee's account was heard and allowed by said probate court without any notice to the parties in interest. It does not state fully the items of income and expenditure, and how the principal of the trust is invested. It was not sworn to, and the item of fifty dollars claimed to have been paid to the poor of the Protestant Episcopal Society of Branford, was wrongfully paid, to the prejudice of the appellant as an heir at law of said estate."

The appellee answers that there is but one Protestant Episcopal Society within the limits of the town of Branford and there has never been but one such society in said town ; that it is organized in accordance with the provisions of the statutes of the state and the canons of the Protestant Episcopal Church in the United States and of the diocese of Connecticut, and it is known as Trinity Parish of said Protestant Episcopal Church. Said society has certain rules, regulations and practices for the support of charitable institutions and of the poor who belong to said parish and society, and under such rules, regulations and practices, and the canons of said Episcopal Church, the poor of said society have been for many years in the past and now are assisted and supported.

The Superior Court reserved the questions for the advice of this court.

As to the objection that one, and the wife of another witness to the will, are members of the Protestant Episcopal Society of Branford. The statute in force at the execution and operation of this will declared void every devise or bequest in a will to a subscribing witness, or to the husband or wife of such, unless there should be other sufficient attes-

tation.   Of course the reason for this is, that it removes all temptation to the exercise of undue influence upon a testator for purposes of pecuniary benefit.

In this case there is a possibility that the witness and the wife of the witness, may become members of the class pointed out in the will, namely, the poor of said society at a time when the income has not been exhausted by other members of the same class, and may obtain relief therefrom.   But this possibility does not come within any definition of property, or of a right in property, known either to the law or to the common understanding.   If brought to the test of a sale in market it would prove to be absolutely without value; consequently the law cannot weigh it as a temptation to wrong doing.

Moreover in 1802, when the common law barred interested persons from testifying, this court in *Cornwall* v. *Isham*, 1 Day, 35, established a bequest to the inhabitants of the First Society in Colchester, for the purpose of supporting a school in said society, the scrivener and all the witnesses to the will being inhabitants of the society, possessed of large estates and having minor children to educate.   Here was not only a possibility, but a probability ;  not only a probability, but what in the general understanding would be regarded as a certainty, that the bequest would relieve some one of the witnesses at least of a part of the burden of taxation for the support of schools   But the court in effect established the rule that inhabitants of municipal or ecclesiastical corporations, of towns or parishes, are competent witnesses to the execution of a will, for the reason that they do not receive anything by the will which they can sell, or devise, or which would descend.   That rule now has the form and power of a statute.   General Statutes, § 539.

For a long time prior to the execution of the will there had been and still is in the town of Branford one, and one only, association of persons who had united to form, and had formed themselves and their successors into, an ecclesiastical society, under the constitution and laws of this state and under the constitution and canons of the Protestant

Episcopal Church in the diocese of Connecticut, for the purpose of supporting the worship of Almighty God according to the doctrine, discipline and liturgy of said church in the United States, and had taken for themselves, as they lawfully might by statutory permission, the right to be known in law as the Parish of Trinity Church in the town of Branford. As such, before the execution of the will, it was in union with the convention of the diocese of Connecticut and subject to such canons as that convention, and the general convention of the Protestant Episcopal Church in the United States of America might adopt. As such, by statute, it has and may exercise the powers of bodies corporate for purposes within the law of its being, and may receive gifts for its charitable uses. Whether this association is spoken of as a society, or a church, or a parish, the corporate entity is the same.

It has ever been the law and practice of the church to relieve the poor from alms given for that purpose.

The canons for the government of that portion of the church organized and existing under the name of the Protestant Episcopal Church in the United States, bear upon every parish in union with the convention in any diocese, and one of these provides that "the alms and contributions at the administration of the Holy Communion shall be deposited with the minister of the parish or with such church officer as shall be appointed by him to be applied by the minister, or under his superintendence, to such pious and charitable use as shall by him be thought fit."

And it is found that, in accordance with the rubrics and canons, and also in accordance with the practices, customs and common law of the Protestant Episcopal Church in the diocese of Connecticut, it is the practice, rule and duty, in all its parishes, including said Trinity Parish of Branford, for the rectors to inquire into the condition of the poor and needy of the parish, and to distribute to them from the alms received at the communion or from other sources, such moneys and assistance as may come into the hands of the rector for this purpose. In making such distribution under such

practice, all poor and needy persons who are attendants upon the church services in the parish, without regard to age or sex, or whether legal members of the society or communicants in the church, are included without discrimination. It is further found that the rector of Trinity Parish, in common with all rectors of parishes in Connecticut, has discretionary power, by said canons, rubrics and customs, to select and determine what poor people in the parish deserve and need pecuniary assistance. Therefore every parish is in legal effect a corporation chartered for this among other purposes, namely, the relief of the poor by its duly appointed agent, its rector. Consequently we have all of the elements necessary to a valid trust. A fund; a trustee with such right and title as will enable him to hold and defend it; a use, charitable within the statute; a class of beneficiaries so specifically described as to be identified; and a corporation chartered with power, and charged with the duty, through its authorized agent, to determine who are members of the class described by the testator, to select individuals from that class, and to make them beneficiaries under the use.

It is not necessary to the validity of this trust that the trustee should be clothed with power to select the beneficiaries. It is enough that some person, or some corporation speaking through a person, its agent, should have that power.

Nor that there should have been in existence at the time of the death of the testator any member of the class for whose benefit he created it. We must take judicial notice of the certainty that the poor will always be among men.

Therefore the law cannot determine that a charity which must go into operation as soon as there shall be a person in the parish needing pecuniary assistance in obtaining such food, clothing, fire and shelter as, according to the general understanding, are necessary, is so long postponed as to offend the law against perpetuities.

Moreover, the finding is that, at his death, there were, and ever since have been, and now are, attendants upon the services in the parish church, needing and receiving pecuniary

assistance from the parish alms through the agency of the rector; some communicants have had and some now need pencuniary assistance.

Only adults can vote as members of the corporation. But when the question is, who may become members of the class described as the poor of the parish, or who according to the law of the being of the church and according to its canons and practice are entitled to receive alms when in need, or who as members of that class may be selected as beneficiaries under a trust for their use, the technical limitation to adult males ceases to operate within the meaning of the constitution and canons of the church, and within the common understanding as well. Regardless of age or sex, the rector may, in the exercise of his discretion, determine whom, being poor, he will relieve from the alms in his hands; and whom, within the parish, being poor, he will relieve from the income from any trust fund devoted to that use, within the limitation imposed by the creator of the trust. The language of this testator is to be interpreted in the light of the canon and in that of the common understanding.

In this particular case the trustee is to hold the principal of the fund; also the income, until he is required to expend it for the present, actual relief of the poor of Trinity Parish in Branford, upon the determination and request of its rector for the time being; with liability, of course, to account.

That it is legally possible to the rector to select the "poor of said society," within the meaning of the testator, this court has repeatedly decided. *Coit* v. *Comstock*, 51 Conn., 352; *Beardsley* v. *Selectmen of Bridgeport*, 53 id., 489; *Bronson* v. *Strouse*, 57 id., 147.

On April 2d, 1888, Trinity Parish in the town of Branford formally accepted the bequest, and directed its rector to select beneficiaries from the poor of the parish. But neither its omission nor refusal even to accept or select, would affect the validity of the trust. Its sole office in this matter is to point to the beneficiary. If it refuses or neglects, the court will substitute another instrumentality, upon the principles which would govern it in supplying a trustee.

This conclusion makes it unnecessary to consider the appellant's objection to the trustee's account. As she has no interest in the estate, she is not to be heard upon that subject.

The Superior Court is advised that the reasons of appeal are insufficient.

In this opinion the other judges concurred.