THE PRESIDENT AND FELLOWS OF YALE COLLEGE ET AL.
APPEAL FROM PROBATE.

Third Judicial District, Bridgeport, October Term, 1895. ANDREWS, C. J.,
TORRANCE, FENN, HAMERSLEY and THAYER, Js.

A testator gave the residue of his estate to trustees, directing them to dis-
tribute it in specific proportions and in trust, to certain named corpora-
tions which were to apply the income to charitable purposes designated
in the will. Among these bequests was one to the State, "in trust, the
income to be applied toward the maintenance of any institution for the
care and relief of idiots, imbeciles or feeble-minded persons." A sub-
sequent clause provided that if "any of the trusts should not be
accepted, the amount intended therefor shall be proportionately dis-
tributed in augmentation of such as may be accepted." The State
refused to accept the trust and the Court of Probate appointed a trus-
tee in its place. *Held*, that as the intent to confer a direct benefit
upon the State was apparent, and as no substitute trustee could pos-
sess the sovereign powers of the State in administering the trust, the
gift must be regarded as one to the State, rather than one to the inmates
of an institution such as the will described; and the refusal of the State
to accept the trust left this portion of the residue to be distributed in
augmentation of the other charitable trusts, as directed by the testator.

[Argued October 29th, 1895—decided January 6th, 1896.]

APPEAL from an order and decree of the Court of Probate
for the District of New Haven, appointing a trustee under
the will of Philip Marett, taken to the Superior Court in New
Haven County and tried to the court, *Ralph Wheeler, J.;*
facts found and case reserved for the consideration and advice
of this court. *Judgment reversing the action of the Court of
Probate advised.*

The portions of the will of Philip Marett, material to the
case, are as follows :—

" Sixth. All the remainder and residue of my estate, real
and personal, of which I may die seized or possessed, wherever
situated, whether now belonging to me or hereafter acquired
in any manner whatever, I give, devise and bequeath to my
said wife, Martha B. Marett, and my son-in-law, Arthur N.
Gifford, and their successors in the trust hereby created, to

be held by them in trust for the following uses, purposes and trusts and subject to the following limitations, namely: During the lives of both my wife and daughter the net income of such trust estate shall quarterly be equally divided, one half to be retained or paid to my said wife, and the other half to be paid to my said daughter personally, on her sole and separate receipt and for her exclusive use and benefit: should either my wife or daughter die before me, or if they both outlive me, then upon the death of either of them the whole net income shall belong to and be retained by or paid over to the survivor, as the case may be, so long as she may live; and after the death of such survivor all the remaining amount of the trust estate shall be disposed of as is hereinafter directed.

"Seventh. In regard to the final disposition of the trust estate, I give full power and authority to my said wife and my said daughter each severally to direct and appoint the disposal of twenty-five thousand dollars by any instruments or writings in the nature of a last will and testament, with or without a seal, executed in the presence of one or more witnesses, to take effect after the decease of the survivor of them and not before, so that no part of the net income shall be diverted during the life of either of them.   Such instruments or writings shall be equally operative whether executed before or after my decease.   The balance or remainder of such trust estate, including whatever may not be disposed of by my wife and daughter, or either of them, pursuant to the authority herein given, I hereby direct shall after the decease of the survivor of them be appropriated, distributed and disposed of as follows, namely:

"One-fifth part to The Connecticut Hospital Society in trust, the income to be applied to the support of free beds for the benefit of poor patients in said institution, giving preference to those incurably afflicted, if such are admissible.

"One-fifth part to the City of New Haven, to be held in trust by the proper authorities and the income to be applied through such agencies as they see fit for the supply of fuel

and other necessaries to deserving indigent persons, not paupers, preferring such as are aged or infirm.

"One-fifth part to the President and Fellows of Yale College in trust, the income to be applied to the support of scholarships or such other purposes in the academical department as they may judge expedient.

"One-tenth part to the New Haven Orphan Asylum, to be held in trust, and the income applied to the support of poor inmates therein.

"One-tenth part to the Saint Francis (Catholic) Orphan Asylum, to be held in trust, and the income to be applied to the support of poor inmates therein.

"One-tenth part to the City of New Haven, in trust, the income to be applied by the proper authorities for the purchase of books for the Young Men's Institute, or any public library which may exist in said city.

"One-tenth part to the State of Connecticut, in trust, the income to be applied toward the maintenance of any institution for the care and relief of idiots, imbeciles or feeble-minded persons.

"The appropriations specified above are to be made effective notwithstanding any deficiency or inaccuracy of description, so that my objects may not be defeated by any technicality or informality.   Should any of the trusts not be accepted the amount intended therefor shall be proportionately distributed in augmentation of such as may be accepted.   In the division of the trust estate the same need not be sold and converted into money, but may be divided at the discretion of the trustees, so as to approximate as near as may be convenient the intended proportions.

"Eighth. In case of vacancy at any time in the trusteeship by death, resignation, or otherwise, it shall be filled by an appointment to be made by my wife and daughter, or the survivor of them, and in default of such appointment it shall be made by the authority having jurisdiction of the case."

*Henry T. Blake,* for the surviving trustee of the estate of Philip Marett.

The refusal of the State to act as trustee did not work a failure of the bequest, whereby the other legatees take as alternative beneficiaries. *Dailey* v. *New Haven*, 60 Conn., 314; *Conklin* v. *Davis*, 63 id., 377–383; *Dexter* v. *Evans*, 63 id., 58; *Hayden* v. *Conn. Hospital*, 64 id., 320. The bequest itself is not void for uncertainty. *Dailey* v. *New Haven*, *supra; Woodruff* v. *Marsh*, 63 Conn., 125. The Court of Probate has jurisdiction to appoint a substitute trustee. *Dailey* v. *New Haven*, *supra; General Statutes*, § 491.

*Henry Stoddard* and *John W. Bristol*, for Yale College and Connecticut Hospital Society.

The trust imposed on the State by the will in question is void, and has therefore failed by operation of law.

(*a*) Because the trust for the maintenance of *any* institution of the described character is not confined to *charitable* institutions solely, but includes any institution whether charitable or otherwise, and is therefore not a charitable trust. *Stratton* v. *Physio-Medical College*, 149 Mass., 505–507; *Adye* v. *Smith*, 44 Conn., 60; *Thomson* v. *Granis*, 20 N. J. Eq., 489; *Swift* v. *Easton Ben. Soc.*, 73 Pa. St., 362; *Old South Soc.* v. *Crocker*, 119 Mass., 1; *Corks* v. *Manna*, 12 L. R. Eq. Cas., 575. (*b*) Because, as it is not a charitable trust, it cannot be upheld as a trust not charitable. *Holland* v. *Alcock*, 108 N. Y., 312; 1 Beach on Modern Equity, § 206; *Read* v. *Williams*, 125 N. Y., 566; *Pritchard* v. *Thompson*, 95 N. Y., 76; *Tilden* v. *Green*, 130 id., 29; *Bristol* v. *Bristol*, 53 Conn., 242, 257; *Fairfield* v. *Lawson*, 50 id., 501. Not being a charitable trust it offends the statute of perpetuities and is, therefore, void. *Coit* v. *Comstock*, 51 Conn., 352, 386; *Bolles* v. *Smith*, 39 id., 217, 222; *Bristol* v. *Bristol*, 53 id., 257, 258; *Leake* v. *Watson*, 60 id., 498; *Anthony* v. *Anthony*, 55 id., 256; *Alfred* v. *Marks*, 49 id., 473; *Rand* v. *Butler*, 48 id., 293; *Jocelyn* v. *Nott*, 44 id., 55; *Bates* v. *Bates*, 134 Mass., 110, 113, 114; *Green* v. *Hogan*, 153 id., 462, 465. But if the trust is not void, a discretionary and personal power of selection was confided by the testator to the State, and to the State alone; which cannot be exercised by another

trustee appointed in the place of the State by the Court of Probate. *Crum* v. *Bliss*, 47 Conn., 592, 603; *Fontain* v. *Ravenel*, 17 How., 369; *Pritchard* v. *Thompson*, 95 N. Y., 76; *Druid Park Heights Co.* v. *Oetinger*, 53 Md., 46; *Cole* v. *Wade*, 16 Ves., 27, 44; *Newman* v. *Warner*, 1 Sim., N. S., 457; *Walch* v. *Gladstone*, 14 id., 2; *Hubbard* v. *Lauet*, Ambler, 309; *Down* v. *Warrall*, 1 Myl. & K., 561; *Wilson* v. *Pennock*, 23 Pa. St., 238. The case of *Dailey* v. *New Haven*, 60 Conn., 314, is clearly distinguishable, as are also other cases cited by the other side. They were not cases where a personal and discretionary power of selection was confided in the trustees named, as in the case at bar. The Court of Probate had no power to pass the decree appealed from; because the decree is in substance and effect an exercise of the doctrine of *cy pres*, which if recognized at all by the laws of this State, has no application to trusts not charitable.

*Lynde Harrison*, for Rufus E. Holmes, trustee.

The claim made by the appellants in this case is precisely the same as one of the claims made by the defendants in the case of *Dailey* v. *New Haven*, 60 Conn., 314. The same will was before this court in that case, and the circumstances were almost precisely the same. Unless that case can be distinguished from the case at bar, it must control the decision in this case. In this case it is manifest that the real trust was not to benefit the State of Connecticut as trustee, but to benefit imbeciles, idiots and feeble-minded persons. By the expression, "should any of the trusts be not accepted," the testator had reference, not to the declination of a trustee, but rather to the refusal of an intended beneficiary. The Court of Probate had power to appoint Mr. Holmes as trustee, in place of the State. *Dailey* v. *New Haven*, 60 Conn., 326. If Mr. Holmes fails to execute the duties of his trust according to the terms of the will, a court of equity would interfere. *Goodrich's Appeal*, 57 Conn., 275, 285. A discretionary power in the execution of a trust may be implied. *New Haven Y. M. I.* v. *New Haven*, 60 Conn., 32, 40; *Storrs Agr. School* v. *Whitney*, 54 id., 342; *Bronson* v. *Strouse*, 57 id., 147; 3

Jarman on Wills, 704; *Clement* v. *Hyde,* 50 Vt., 715; *Pickering* v. *Shotwell,* 10 Pa. St., 23.    The bequest in question is not void for uncertainty.    *Perrin* v. *Cary,* 24 How., 465; *Kain* v. *Gibbonry,* 101 U. S., 362; *Russell* v. *Allen,* 107 id., 182; Bispham's Equity, § 116; *Russell* v. *Allen,* 107 U. S., 163–167; *Jones* v. *Habersham,* ibid., 174; *Brewster et al.* v. *McCall,* 15 Conn., 273, 292; *White* v. *Fiske,* 22 id., 30, 53; *Treat's Appeal,* 30 id., 113; *Hughes* v. *Dailey,* 49 id., 34; *Tappan's Appeal,* 52 id., 412; *Beardsley* v. *Selectmen of Bridgeport,* 53 id., 489; *King* v. *Grant,* 55 id., 166; *Camp* v. *Crocker,* 54 id., 21, 23; *Bristol* v. *Ontario Orphan Asylum,* 60 id., 472; *Coit* v. *Comstock,* 51 id., 352, 377; *Marsh* v. *Woodruff,* 63 id., 125.    In its ancient English form, the *cy pres* principle has not been recognized here.    In a modified form it has existed in this State for many years.    *Hughes* v. *Dailey,* 49 Conn., 34;. *White* v. *Fiske,* 22 id., 53; *Philadelphia* v. *Girard's Heirs,* 45 Pa. St., 9; *Burr* v. *Smith,* 7 Vt., 241; *Howard* v. *American Peace Society,* 49 Me., 302; *Derby* v. *Derby,* 4 R. I., 439; *Winslow* v. *Cummings,* 3 Cush., 358; *Bliss* v. *Am. Bible Society,* 2 Allen, 334; *Amer. Academy* v. *Harvard College,* 12 Gray, 582; *Academy* v. *Clemmons,* 50 Mo., 167; *Keifer* v. *German American Seminary,* 46 Mich., 636; *Gilman* v. *Hamilton,* 16 Ill., 225; *Moore* v. *Moore,* 4 Dana, Ky., 354; *Manners* v. *Phila. Library Co.,* 93 Pa. St., 165.

HAMERSLEY, J.    The general intent of the testator is clearly expressed in the will.    He intended that the whole of his property remaining after payment of a few legacies and the termination of life interests in his wife and daughter, should be divided between the seven corporations named, each to hold the sum distributed to it, in trust for the application of the income to the charitable object described; and in case any trustee named should not accept the trust confided to it, the amount intended for such trust should be proportionately distributed in augmentation of the other trusts.    The intent to devote the whole residue to charitable purposes is expressed absolutely; the intent to devote a por-

tion to any of the specific purposes described, is expressed contingently on the acceptance of the trust by the trustee selected for that purpose.   It is the duty of the court to give effect to such intention ; because it is the plainly expressed will of the testator, and because gifts to charitable uses are highly favored, and may even call for a liberal construction if necessary to support such gift in accordance with the donor's intent.

In order that the general intent might more certainly be executed the testator, instead of giving a specific portion to each of the corporations selected, gives the whole residue to two trustees, providing for the appointment of successors in the case of vacancies in such trusteeship.   He then directs these trustees, upon the termination of the life estates, to appropriate, distribute and dispose of the trust funds bequeathed and devised to them, as follows, namely : one fifth part to the Connecticut Hospital Society, in trust, etc.—naming each of the selected corporations and describing the charitable purpose to be carried out by it; he then instructs these two trustees that " the appropriations specified above are to be made effective notwithstanding any deficiency or inaccuracy of description, so that my objects may not be defeated by any technicality or informality " ; and further directs them that " should any of the trusts not be accepted, the amount intended therefor shall be proportionately distributed in augmentation of such as may be accepted."

The will gave the residue of the testator's estate to the trustees, and directed them to appropriate and distribute one tenth part thereof " to the State of Connecticut, in trust, the income to be applied towards the maintenance of any institution for the care and relief of idiots, imbeciles or feeble-minded persons."

In pursuance of this direction, the trustees offered the one tenth part to the State, which refused to accept the trust. The will then directed them to distribute the amount intended for the trust declined by the State, proportionately in augmentation of the other trusts.   This they did not do, but assumed that the decision in *Dailey* v. *New Haven*, 60 Conn.,

314, so settled the meaning of this will that it became their duty, on the refusal of the State to accept the trust, to apply to the Court of Probate for the appointment of a trustee in place of the State, and to distribute to the trustee so appointed the one tenth part declined by the State. This is an appeal from the order appointing a trustee upon such application.

If the trustees are right in their assumption, then the order of the Court of Probate should be affirmed by the Superior Court ; and if they are wrong, the order should be set aside. And so the controlling contention between counsel upon the argument, related to the application to the case at bar of the decision in *Dailey* v. *New Haven.* The latter case was a suit brought to the Superior Court seeking an injunction against the common council of New Haven declining to receive the fund to be paid the city by the two trustees under the same will, in pursuance of the testator's direction that they should appropriate and distribute one fifth part of the trust estate given to them, " to the city of New Haven, to be held in trust. by the proper authorities, and the income to be applied through such agencies as they see fit, for the supply of fuel and other necessaries to deserving indigent persons not paupers, preferring such as are aged or infirm." The complaint also asked the court, in case it should be held that the city had the power to decline the trust and in case the city should decline the trust, to take such fund into the care of the court, and to appoint a suitable trustee to receive the same from the trustees under the will. Upon a reservation this court advised the Superior Court to deny the injunction and, unless a trustee should be appointed by the Court of Probate to receive the fund intended for the " deserving indigent persons," to appoint such trustee.

This result was based upon the fundamental consideration that the city of New Haven had no legal power to support or aid " indigent deserving persons not paupers," and could not legally become trustee of the fund. The testator had in effect named no person to whom his trustees could deliver the charitable trust fund as directed. The case presented

was analogous to one where a devisor or donor in the instrument creating a trust, fails to appoint a trustee; the power of a court of equity is clear to supply the deficiency in case of such neglect, and it was held that the testator's direction to his trustees to distribute proportionately in augmentation of the other trusts the amount intended for any trust that might not be accepted, should not be applied to the particular trust before the court where the testator had failed to name a trustee who could accept; and that assuming the language to be equivocal and the intent doubtful, a reasonable construction that should give effect to the testator's charitable intent ought to be adopted; and his charitable intent towards the "indigent deserving persons," in the disposition of the one fifth part in question under the quandary induced by his failure to appoint a trustee, was more clearly indicated than his charitable intent in respect to that one fifth part towards the other selected beneficiaries.

The present case is entirely different. The testator has named a trustee competent to accept the trust. The State has power to accept a gift in trust to apply the income thereof towards the maintenance of some institution for the care and relief of idiots. The maintenance of such an institution, either directly under immediate State supervision, or indirectly through annual aid given to an existing institution, is a lawful exercise of governmental power and duty. This being so, it is immaterial to the disposition of this case, whether or not the language used in making the gift to the State would, if used in making a similar gift to an individual, support a valid gift for charitable use. A gift to the State in trust to apply the same in executing a lawful governmental function, is a valid gift. Whatever may be thought of the policy of accepting such gifts, there can be no doubt of the power of the State to accept or refuse. The State has refused to accept the trust in question; and the plain language, as well as the clear intent of the will, require the trustees to distribute the amount intended for such non-accepted trust proportionately in augmentation of the trusts that have been accepted. There is nothing equivocal in the

language; nothing doubtful as to the intent. There is no occasion for construction.

The appellee relies upon the following language used in the opinion in *Dailey* v. *New Haven* (p. 323), while arguing in support of the conclusion announced: " The testator evidently had in mind two classes of beneficiaries, one where the real purpose was to benefit the trustee, and one where the trustee had no independent duty towards the beneficiaries, and was considered only as a medium through which the benefit would be applied to them. That is to say, some of the trusts were in effect, and evidently so intended, gifts to the trustee. The question whether it would be of advantage to the trustee to accept or not was the only real question, and a refusal might properly end the matter. Certainly the bequest to the President and Fellows of Yale College, for the support of scholarships or such other purposes in the academical department as they may deem expedient, is of that nature. The direct benefit is to the college. By its very terms the trust is incapable of being administered by another. A refusal by the trustee named to accept, would end the matter, and make a case for the sensible application of the provision in the will regarding non-accepted trusts. But, as already suggested, in the clause under discussion the intent was to help only the beneficiaries. As the city had no corporate duty in respect to them, it could have been inserted only for their benefit, and it is almost certain that the testator did not intend to provide that in this case the charity should fail unless administered by the city."

It is claimed that if this language requires the clause now in question to be treated in the same manner as the clause then under discussion was treated, it was unnecessary to support the decision in that case, and cannot bind the appellants who were not parties to the former proceeding; and also that the use of such argument was admittedly induced by an oversight in reading the 8th article of the will as applicable to the corporate trustees mentioned in the 7th article. There is no occasion to discuss these claims, for we are satisfied the language quoted is not inconsistent with the conclusion now reached.

If we assume that the testator had in mind, in framing the 7th article of his will, two classes of beneficiaries, one represented by Yale College, and the other by the city of New Haven as trustee for deserving indigent persons; that a refusal to accept by a trustee named in the former class would make a case for the application of the provision regarding non-accepted trusts, and that a refusal to accept by a trustee named in the latter class would make a case for the administration of the trust by a court of equity and the appointment of another trustee—we think it clear that the State comes within the same class of beneficiaries as Yale College.

The discriminating tests of these classes are: 1. An intent to directly benefit the trustee, as distinguished from an intent to benefit specific beneficiaries without benefit to the trustee named, such trustee having no independent duty towards the beneficiaries and being only a medium through which the benefit would be applied to them.  2. The capacity of another to administer the trust committed by the testator to the trustee selected.  An application of either of these tests places the State in the class illustrated by Yale College.

Whether we fancy the testator's mind was directed more especially to the general public benefit to be derived from maintaining some institution for the care and relief of idiots, or to the particular benefit to the individual idiots who might become its inmates, it is certain that his gift was calculated to directly benefit the State.  The maintenance of such an institution is a legitimate subject of State expenditure, which might be reduced by the income derived from the testator's gift, just as truly as the income of the gift to Yale College might reduce its expenses for the support of scholarships or other purposes in the academical department.  For many years the State has recognized its duty in respect to the maintenance of institutions for the care of imbeciles.  It has invested more than $20,000 in such an institution, securing the application of the money to the object by a statutory mortgage.  Special Laws, 1877, p. 120; id., 1893, p. 869. It has annually appropriated large sums for a similar purpose.  The fact that when this will was executed an institu-

tion had been incorporated and was in operation in this State, is strongly suggestive that the testator, in directing this gift to be made to the State and not to the existing corporation, contemplated the use of this gift for the benefit of the State in the maintenance of such an institution under its own supervision.

It is also plain that the trust in the State is as truly personal in its nature as the trust in Yale College.   The testator knew that the State was sovereign, possessing a power to execute the trust belonging to no one else.   There was no institution to which he was willing to give this fund or intrust with the expenditure of its income.   The selection he could not make he would suffer no other individual to make; other persons like himself would be confined to existing institutions, no one of which might be adapted to carry out his purpose.   The State alone was not so limited; it could create an institution in default of an appropriate existing one.   Therefore he directs his gift to be made to the State.   The field of that trust is distinct from any that could be committed to an individual.   The character impressed on the trust by the very fact of its committal to the State, prevents its administration by any one else.   " By its very terms the trust is incapable of being administered by another.   A refusal by the trustee named to accept would end the matter and make a case for the sensible application of the provision in the will regarding non-acceptance."

As we are satisfied that the refusal of the State to accept the trust does end the matter, and therefore by the express terms of the will the trustees must distribute the one tenth part remaining in their hands proportionately in augmentation of the other trusts, the questions argued as to the validity of such a gift to an individual trustee, and also the question as to whether, if the gift failed by operation of law, the one tenth part should be treated as intestate property, are excluded from our consideration.

The Superior Court is advised to render judgment that the order of the Court of Probate be reversed and set aside.

In this opinion the other judges concurred.