HARTFORD NATIONAL BANK AND TRUST COMPANY, TRUSTEE (ESTATE OF CORNELIUS B. ERWIN), *vs.* OAK BLUFFS FIRST BAPTIST CHURCH ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued October 11th, 1932—decided March 14th, 1933.

*Mortimer H. Camp,* with whom, on the brief, was *Margaret P. Camp,* for the appellants (defendants Oak Bluffs First Baptist Church *et al.*).

*John H. Kirkham,* for the appellant (defendant New Britain Institute).

*George W. Crawford,* for the appellee (defendant Talladega College).

*Spencer Gross,* for the appellees (defendants Board of Trustees of Olivet College *et als.*).

MALTBIE, C. J. This is an action by the plaintiff for advice as to the administration or disposition of a fund held by it in trust under a paragraph of the will of Cornelius B. Erwin, late of New Britain. That paragraph creates a trust as follows: "Whereas, in her will my wife has made some provision for the First Baptist Church of Oak Bluffs, Marthas Vineyard, Mass., and the Sunday School of said Church, now if I shall survive my wife, but not otherwise, I give and bequeath to the said First Baptist Church of Oak Bluffs the sum of three thousand (3,000) dollars, of which sum One thousand (1,000) dollars, shall be used for the general uses and purposes of said church, and the remaining two thousand (2,000) dollars shall be held as a permanent fund, in trust, under the management of the acting Pastor and Deacons of said church, the annual income of which shall be used for the benefit of the Sunday School Library of said Church, both for teachers and scholars, said income to be expended annually under the direction of the acting Pastor of said Church and the acting Superintendent of said Sunday school." Mr. Erwin died in 1885 and in 1892 the plaintiff was substituted as trustee of the $2000 fund established for the benefit of the Sunday school library of the church and has since continued to act as such. The parties are in substantial agreement as to the facts involved in the situation which has caused the plaintiff to make this application. They are as follows:

Owing to the small number of protestant families in Oak Bluffs it has been found impossible since March, 1930, to maintain more than one protestant church in the community. As the Trinity Methodist Episcopal Church was then the strongest protestant church in the community it has continued to hold regular services and the other protestant denominations have

united in worshiping in its services since that time, so that it is in effect the community church. The First Baptist Church since March, 1930, has not held separate services and its members have attended the services at the Trinity church and its younger members have participated in the young people's activities conducted by it. Teachers in the Sunday school of the Baptist church when that church was holding separate services are now teachers in the Sunday school of the Trinity church and the superintendent of the Sunday school of the Baptist church is now superintendent of the Sunday school of the Trinity church and persons who attended the Sunday school of the Baptist church are now attending the Sunday school of the Trinity church. The courses of study in the Sunday school of the Trinity church include those courses formerly conducted in the Sunday school of the Baptist church and the members and children of the Baptist church congregation are now receiving the same religious instruction in the Sunday school of the Trinity church that they would have received if the Baptist church were still maintaining a separate school. The Baptist church has not amalgamated with the Trinity church nor has it surrendered its charter but it still holds annual meetings for the election of officers and makes annual allotments for missions, hospitals and so forth. It may resume its separate services at some time in the future if conditions in the opinion of its members warrant such a course. On the other hand, it may in the future be for the best interests of the community that the Baptist church surrender its charter and that its members unite with the Trinity church. Subsequent to the discontinuance of separate services by the Baptist church, it deposited the Sunday school library purchased with the income from the fund in question in the Trinity church for such time as the

Baptist church should hold no separate Sunday school services. The Baptist church empowered its treasurer to receive the income of the fund, and directed the chairman or acting chairman of its board of deacons and the superintendent of the Sunday school of the Trinity church to select the books or literature to be purchased for the library, unless other persons should be appointed by a court having jurisdiction, and directed that such books or literature be stamped "First Baptist Church Sunday School Library, Purchased from Income of the Erwin Fund." Trinity church continues to invite and welcome members of the Baptist church to its Sunday school services.

Mr. Erwin's will contained also provisions for the disposition of all his residuary estate and a further provision that no portion of his estate should in any event become intestate property but that "in case of the invalidity or failure of any of the bequests or provisions in this will the estate thereby becoming intestate" should belong equally to two named beneficiaries. The trial court held that by reason of the facts we have stated, the trust established for the benefit of the Sunday school library of the Baptist church has failed and proceeded to determine that the fund ought to be distributed as a part of his residuary estate. If the trial court was wrong in holding that the trust had failed, it is not necessary to consider the correctness of its ruling with reference to its disposition under the other provisions of the will.

Much of the argument before us has been devoted to consideration of the possible application of the cy pres doctrine in the situation we have outlined. Since the testator has himself provided for a disposition of the fund in case of the failure of the bequest, that doctrine could have no application, at least in its broader aspect. *Bristol Baptist Church* v. *Connecticut Baptist*

*Convention,* 98 Conn. 677, 684, 120 Atl. 497; *First Congregational Society* v. *Bridgeport,* 99 Conn. 22, 31, 121 Atl. 77. The real question before us is, has there been a "failure" of the bequest for the benefit of the Sunday school library of the Baptist church, within the true intent and meaning of that word as used in the will of the testator. In approaching that question it is necessary to remember that charitable trusts such as this are highly favored and every reasonable intendment is to be made in order to sustain them and make them effective. *Strong's Appeal,* 68 Conn. 527, 532, 37 Atl. 395; *First Congregational Society* v. *Bridgeport, supra,* p. 30.

The plaintiff has been substituted as trustee of the fund by decree of the Court of Probate and there is no want of a trustee to hold the fund. The direction that the income from it is to be expended annually under the direction of the acting pastor of the Baptist church and the acting superintendent of its Sunday school does not give rise to such a personal discretion in any particular persons that a proper court might not authorize others to act in case there were no such persons who could do so. *Goodrich's Appeal,* 57 Conn. 275, 18 Atl. 49; *Conklin* v. *Davis,* 63 Conn. 377, 383, 28 Atl. 537; *Williams* v. *Gardner,* 90 Conn. 461, 466, 97 Atl. 854; *Greenwich Trust Co.* v. *Converse,* 100 Conn. 15, 19, 122 Atl. 916. The library bought with the income of the fund is still in existence. The superintendent, teachers and members of the Sunday school of the Baptist church are still giving or seeking instruction of the same nature as they were giving or seeking before the Baptist church ceased to hold services. If there has been a "failure" of the bequest, it must be because of the fact that there is not now and has not been for some three years any Sunday school

of the Baptist church in existence and consequently no teachers or pupils of that particular school.

In the first place, it is to be noticed that there has been no complete and final abandonment of Sunday school instruction in connection with the Baptist church. That church still exists as an organization and may at any time resume services and re-establish its Sunday school. Should it take that course, the purpose of Mr. Erwin's bequest could again be served in the most literal accord with its terms. We have found no case where a trust was held to have failed in anything even approaching such a situation. The fact that, at any particular time, there are no persons qualified to receive the benefit intended by a charitable bequest is not necessarily a reason for holding that it has failed, and, if no other disposition of the income is provided, it may be permitted to accumulate to await the time when proper beneficiaries are to be found. *Bronson* v. *Strouse,* 57 Conn. 147, 151, 17 Atl. 699; *Goodrich's Appeal, supra,* p. 284. In *Huger* v. *Protestant Episcopal Church,* 137 Ga. 205, 207, 73 S. E. 385, it appeared that the defendant church, to which certain land had been deeded, had not been active for some years, but the court held that there had been no such failure of the trust as would give rise to a resulting trust, saying: "But a sluggish or dormant congregation is not beyond the possibility of being awakened to ecclesiastical activity; nor is it impossible that there may be a successor." In *Strother* v. *Barrow,* 246 Mo. 241, 250, 151 S. W. 960, it was held that to constitute the abandonment of a pious use there must be an intent permanently to abandon it and an actual non-user, and the fact that religious services had at times languished and at times been discontinued was not sufficient to establish it. See also *Potter* v. *Thornton,* 7 R. I. 252, 265, and compare *King* v. *Banks,* 220 Ala.

274, 124 So. 871.   So long as the present situation exists, at least, with the possibility of a resumption of the Sunday school connected with the Baptist church, we could not in any event hold that there has been a "failure" of the bequest within the meaning of that word as used in the testator's will.

But we do not need to take so narrow a ground.   It is apparent that the purpose of the bequest was to make available to those who were teachers and pupils in the Baptist church Sunday school the educational and moral advantages accruing from the opportunity to read or study good literature.   It is, however, noteworthy that there is in the bequest no restriction imposed requiring that this literature should be such as might be classed as religious or ethical.   An implication which might arise from the fact that the gift is to the Sunday school of the Baptist church, that Mr. Erwin had some sectarian purpose, is thoroughly rebutted by other provisions of his will in which he made very large gifts to institutions and organizations connected with various sects, Congregational, Baptist and Episcopal.   That his interest was in the educational rather than the sectarian benefits to be served by libraries, is apparent not merely from his very large bequest to the New Britain Institute, a public library, and from a bequest to aid in the establishment of another library which he made, but also from the fact that he provided a trust fund similar to the one before us for a library in connection with a Sunday school of an Episcopal church in New Britain.   In all, he made four bequests for the benefit of the libraries of Sunday schools connected with different churches, almost in the same terms as those used in the provision before us.   Evidently he believed in furthering the purposes which might be served by such libraries.   He designated that connected with the Sunday school of the

Baptist church at Oak Bluffs because of an interest he had in that church and the people who were connected with it. As we have pointed out, that church is still an existing organization, the library bought with the income of his bequest still exists as the property of that church, and still serves those for whose benefit it was particularly intended. It is impossible to avoid the conclusion that had Mr. Erwin contemplated the situation which has arisen he would have provided for the continuation of the trust for the benefit of the Sunday school now existing, and attended and supported by those formerly connected with the Baptist church.

In *Birchard* v. *Scott,* 39 Conn. 63, 69, we had before us a bequest in trust to the committee of a school society, for the benefit in their schooling of families in the society whose taxable property did not exceed a certain sum and we held that the abolition of school societies and the establishment of free education did not prevent the continued use of the fund for families within the territory formerly embraced by the society in question. We said: "We see no ground for believing that the moiety of the income of this estate has been, or now is, perverted from the original purpose had in view by this testator. On the contrary, it seems to us that his intention is fairly and literally being carried into effect, and, for aught that we can discern, that may be continued for an indefinite period of time. It would be unjust alike to the living, and to the memory of the dead, were we to take this estate out of the hands in which this testator placed it to effect a most desirable object, which object it is now effecting, and divert it into other channels." In *Hayden* v. *Connecticut Hospital for Insane,* 64 Conn. 320, 30 Atl. 50, we had before us a trust to establish free beds in a certain insane hospital and we held that, even if ar-

rangements could not be made with the hospital to establish such beds, the income should be used for the benefit of those who would have been served by literal compliance with the terms of the trust, pointing out that this was merely so to construe and apply the will as to effectuate the real intent of the testator. See also *Jepperson* v. *Advent Christian Publication Society,* 83 N. H. 387, 142 Atl. 686; *Reed* v. *Fogg,* 248 Mass. 336, 134 N. E. 47; *Mary Franklin Home* v. *Edson,* 193 Iowa, 567, 574, 187 N. W. 546. The bequest before us is not like that to the President and Fellows of Yale College for the support of scholarships or such other purposes in the academic department as they may deem expedient, where we held, in *Daily* v. *New Haven,* 60 Conn. 314, 323, 22 Atl. 945, that the direct benefit of the bequest was to the college, nor like that to the State made in the same will where we held, in *Yale College's Appeal,* 67 Conn. 237, 34 Atl. 1036, that the gift was such that it could be carried out only by the State and upon the definite refusal of the State to accept it the trust must fail. Expenditure of the income of the fund now in question for the benefit of the Sunday school library now deposited in the Trinity Methodist Episcopal Church at Oak Bluffs will not run counter to the intent of the testator as expressed in his will, but will as nearly effectuate that intent as is possible under existing conditions. There has therefore been no "failure" of the bequest within the meaning of that word as used in the will.

As there is now no acting pastor of the Baptist church or superintendent of its Sunday school who may direct as to the expenditure of the income of the fund, it is well within the power of the Superior Court, upon proper application in this action or another, to name some other persons to perform that service. The plaintiff could then expend the income of the fund for the

benefit of the library under direction of the persons so named.

There is error, the judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.