DAVID E. FITZGERALD, TRUSTEE (UNDER WILL OF DWIGHT W. TUTTLE) *v.* EAST LAWN CEMETERY, INC., ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued December 5, 1939—decided January 3, 1940.

*Charles M. Lyman* and *Louis Evans,* with whom, on the brief, was *Albert M. Herrmann,* for the appellants (defendants Minnie S. Post, Minnie L. Smith and Bertha A. S. Pompano).

*Russell H. Atwater,* with whom was *Frank R. Goldman,* for the appellee (defendant East Lawn Cemetery, Inc.).

*John Clark FitzGerald* appeared for the plaintiff but did not argue the cause.

MALTBIE, C. J.  In the will of Dwight W. Tuttle, who died in New Haven in 1922, is this provision: "I do give, devise, and bequeath to my wife Bertha E. Tuttle the sum of Seven Thousand Dollars, Five Thousand Dollars of which is to be expended in the erection of a Memorial Chapel to my deceased mother, with suitable inscription, and to be known as The Tuttle Memorial Chapel.  Said Chapel to be erected in East

Lawn Cemetery in East Haven, Conn. And the income of the remaining Two Thousand Dollars to be used for the care and custody of the same." In 1927 the administrator c. t. a. of the estate made an application to the Court of Probate in which this provision of the will was recited and it was stated that Bertha E. Tuttle "named therein as trustee" had deceased and that the sum of $7000 referred to in the will had been set aside to comply with its terms; and the appointment of another trustee was requested. After due notice and hearing the court appointed the plaintiff trustee of the trust "created" by the paragraph in question, and he received and ever since has held the money with its accrued income.

The defendant cemetery corporation owns the East Lawn Cemetery in East Haven. On August 24, 1933, the board of directors passed a vote that the legacy "be and it hereby is declined," stating that the sums provided for the erection of the chapel and for its maintenance were both insufficient and that such a building was not required or desirable. The secretary the next day informed the plaintiff of the vote, but with the suggestion that with the funds available the corporation could erect a suitable building containing a rest room and other facilities upon which a memorial tablet could be placed. On May 2, 1938, the directors of the corporation voted to rescind the vote of August 24, 1933, and "to accept the legacy" on condition that the building to be erected should be of a chapel type designed for cemetery purposes, with a suitable inscription, and containing a memorial room which could be used, if required, for services, and that the plans be prepared by the cemetery corporation, subject to such approval as might be required by the Court of Probate. On May 4, 1938, the plaintiff petitioned the Court of Probate for advice as to the

disposition of the fund, but the Court of Probate was of the opinion that the matter should be determined by the Superior Court. Accordingly this action was brought and the plaintiff was advised that the provision in the will created a valid trust, that the vote of the cemetery corporation on August 24, 1933, did not terminate it, and that certain plans submitted to it complied with the terms of the trust. From that judgment this appeal has been taken. No contention is made that a building constructed in accordance with the plans approved by the trial court does not constitute a sufficient compliance with the terms of the will.

The will imposed a duty upon Mrs. Tuttle to use the fund in accordance with the directions of the testator and its terms may not be regarded as merely precatory. *Cumming* v. *Pendleton,* 112 Conn. 569, 573, 153 Atl. 175. That the will did not use the word "trust" or designate Mrs. Tuttle as a trustee is of no moment as there was clearly an intent to create a trust. *Shannon* v. *Eno,* 120 Conn. 77, 81, 179 Atl. 479. The terms of the will did not give rise to such a personal discretion in Mrs. Tuttle that she alone could carry out the testator's intent; and on her death another trustee might be appointed to effectuate his intent. *Hartford National B. & T. Co.* v. *Oak Bluffs Baptist Church,* 116 Conn. 347, 352, 164 Atl. 910. A gift to construct and maintain a building for a charitable purpose for the benefit of those of the public who have occasion to use it constitutes a valid charitable trust. *Eliot's Appeal,* 74 Conn. 586, 602, 51 Atl. 558; *Klein* v. *Bridgeport,* 125 Conn. 129, 131, 3 Atl. (2d) 675; *Teele* v. *Bishop of Derry,* 168 Mass. 341, 342, 47 N. E. 422; Restatement, 2 Trusts, 1149; 2 Bogert, Trusts & Trustees, 1178. If the will created a trust within our Statute of Charitable Uses, the fact

that its duration was for an indefinite time in the future would not invalidate it. General Statutes, § 5000; *Pierce* v. *Phelps,* 75 Conn. 83, 86, 52 Atl. 612; *Klein* v. *Bridgeport,* supra.

The bequest was not one to the cemetery corporation, nor was it for the maintenance of the cemetery or monuments or graves in it, but was for the construction and maintenance of a chapel to be erected in the cemetery. The word chapel, in its ordinary significance, means a place of worship other than a large or regular church, a place of worship maintained for special purposes. Funk & Wagnalls Dictionary. A chapel in connection with a cemetery is intended as a place where burial services may be conducted. These, by immemorial usage, are a recognized part of the religious services of the Christian church. *Application of St. Bernard Cemetery Asso.,* 58 Conn. 91, 95, 19 Atl. 514. Such services serve, not the dead, but the living. A gift of money for the establishment and maintenance of a chapel in a cemetery is a devotion of it to a religious use.

It is inherent in the doctrine of charitable uses that the benefit to be conferred shall be sufficiently general so as to redound to the public good. Restatement, op. cit., p. 1161; 2 Bogert, op. cit., p. 1096. Within this limitation the number of individuals who might be served is not necessarily determinative of the validity of the bequest. In *Eliot's Appeal,* supra, 603, a bequest for the purpose of erecting an Episcopal chapel and sustaining a mission upon certain property was upheld despite the claim that its location was such that only a few would be likely to attend it. The fact that under the will before us the chapel was to be built in the grounds of a private cemetery corporation is not sufficient in itself to make the gift invalid. In *Evergreen Cemetery Asso.* v. *Beecher,* 53 Conn. 551,

553, 5 Atl. 353, it was held that, while a strictly private cemetery would not so far serve the public use as to permit the condemnation of lands for its enlargement, yet one in which the public could acquire the right to bury would be for a public use. See *Application of St. Bernard Cemetery Asso.*, supra, 94. When, after the decision in *Coit* v. *Comstock*, 51 Conn. 352, 386, decided in 1883, in which it was held that a gift to an ecclesiastical society of a fund to be held perpetually, so much thereof as might be necessary to be used to maintain certain burial lots was not within the Statute of Charitable Uses, the statutes were amended so as to put gifts for the care and maintenance of cemeteries, cemetery lots or monuments thereon in the same category with those uses previously within the statute, no distinction was made between the public and private cemeteries. Public Acts, 1885, Chap. 36, General Statutes, § 5000. A bequest to build a chapel in a cemetery, though it is owned by a private corporation, where it is held out as offering burial lots for sale to the general public or those coming within a reasonably large class of that public, sufficiently serves public interest so that the bequest is one for a charitable use. It is not contended in this action that the defendant cemetery corporation is not of this character and the bequest in question created a valid trust.

We are aware that in *Bullock* v. *Commissioner of Corporations & Taxation*, 260 Mass. 129, 156 N. E. 743, it was held that a gift to a private cemetery corporation for the erection of a chapel for burial purposes of the dead was not for a charitable use within the statute exempting from taxation property held for such uses. The gist of that decision is contained in the statement (p. 132): "Even if there is nothing in the will restricting those who may attend the services in the chapel, it is to be assumed that the burial

services are limited to the members or lot owners in the cemetery. Such a trust is for the benefit of a definite number or class of persons and is not a charity." We cannot regard these reasons as sufficient to invalidate such a trust. Burial services are usually attended not merely by members of or lot owners in a cemetery association, but by members of the family and relatives of the deceased, friends, and, if the deceased be a person of prominence, by others who come to do honor to his memory. Such a class is certainly no more definite than those who, for example, might benefit from a gift for masses in a Roman Catholic church for the repose of the soul of a deceased, a type of gift which the Massachusetts court has itself, following the general current of American authority, stated to constitute a charity; *Schouler, Petitioner,* 134 Mass. 426; Restatement, op. cit., p. 1151; 2 Bogert, op. cit., p. 1191; or from a gift designed to maintain the ministry of the gospel of a particular denomination in a particular church edifice. *Eliot's Appeal,* supra, 604. On the other hand, many of the contentions here made were presented in *Newton* v. *Newton Burial Park,* 326 Mo. 901, 34 S. W. (2d) 118, but the court upheld a gift of the proceeds of land to a cemetery corporation, to be used in part to erect and equip a chapel in its grounds, although the court said that the cemetery might not be public in the sense that under the law it could condemn land and although burial was restricted to the bodies of white persons. See also *Webster* v. *Morris,* 66 Wis. 366, 380, 28 N. W. 353.

While the consent of the cemetery corporation to the erection of the chapel on its grounds would no doubt be necessary to carry out the provisions of the trust, the first vote refusing that consent did not terminate the trust. No disposition of the fund was made as a result of that vote. The letter to the plaintiff

informing him of it clearly indicated that the matter was open for further negotiation and he evidently regarded it as not finally determined. A charitable trust is not terminated by mere delay in executing it; *Tainter* v. *Clark,* 87 Mass. (5 Allen) 66, 68; Zollmann, Charities, p. 438; or by a temporary inability to fulfil its purposes. *Hartford National B. & T. Co.* v. *Oak Bluffs Baptist Church,* 116 Conn. 347, 352, 164 Atl. 910. Only a clear impossibility of carrying out the intent of the testator would cause such a failure as would give rise to rights of other parties in the fund. Until there was no longer any reasonable expectation that the cemetery corporation would permit the erection of a chapel, the plaintiff was justified in regarding the trust as still active and so far as the record discloses that was the situation in this case. In *Teele* v. *Bishop of Derry,* 168 Mass. 341, 345, 47 N. E. 422, the failure of the trust was based upon a finding that it would be impracticable to carry out the testator's scheme, but in this case it is not found that the original vote produced such a situation. In *Morristown Trust Co.* v. *Morristown,* 82 N. J. Eq. 521, 91 Atl. 736, the vice chancellor assumed that the refusal of the officials whose consent was necessary to effectuate the trust made it impossible to carry it out, but here such an assumption would be contrary to the facts as they have eventuated; and we have no need to consider what would have been the situation had a claim been made before the rescission of the original vote that the trust had failed. As the corporation has now voted to permit the erection of a chapel in accordance with plans approved by the trial court, there is no reason why that use should not be made of the fund.

There is no error.

In this opinion the other judges concurred.