CHARLES P. STETSON ET AL. *v.* MORGAN GUARANTY
TRUST COMPANY OF NEW YORK

SUPERIOR COURT   FAIRFIELD COUNTY AT BRIDGEPORT   FILE No. 111615

Memorandum filed July 13, 1960

*Gregory Willis,* of Bridgeport, for the plaintiffs.

*Pullman, Comley, Bradley & Reeves,* of Bridgeport, for the defendant.

BOGDANSKI, J.   The plaintiffs are the children of Iola Wise Stetson and Eugene W. Stetson. On September 6, 1927, said Iola Wise Stetson and Eugene W. Stetson created five trusts which are the subject of this action.   Each one of the plaintiffs, respectively, was named as the beneficiary under one of said trusts.   In each one of said trust instruments, said Eugene W. Stetson was named as trustee.   At the time of the creation of said trusts, all of the parties hereinabove mentioned were, and long had been, domiciliaries, residents and citizens of the state of Connecticut.   On July 20, 1959, said Eugene W. Stetson died a resident of the town of Fairfield and his estate is now in probate in said town of Fair-

field. Iola Wise Stetson and the plaintiffs Charles P. Stetson and Eugene W. Stetson, Jr., were, and are still, domiciliaries of the state of Connecticut. Pursuant to paragraph eleven of each one of said trusts, the defendant Morgan Guaranty Trust Co. of New York became the successor trustee of each one of said trusts.

At no time between the date of the creation of the trusts and the date of his death did Eugene W. Stetson pay any New York state income tax on the income from said trusts. Iola Wise Stetson has no present recollection as to where she executed the trust instruments, but as a matter of customary practice, from 1919 to the time of Eugene W. Stetson's death, said Eugene W. Stetson would bring papers relative to family business affairs to their home in Connecticut for her signature. Said Eugene W. Stetson often stated that he was glad he had become a resident of Connecticut, that it was more advantageous with respect to the conduct of family business affairs than it would have been to remain in New York, where he and his family had resided prior to 1919. He repeatedly expressed himself as being interested in maintaining the family capital in equities rather than in bonds. As a senior officer of the Guaranty Trust Company at the time of the creation of said trusts, Eugene W. Stetson was thoroughly familiar with the investment regulations of both Connecticut and New York.

Certificates evidencing the ownership of stock and a bank account, but mostly in the nature of equities, made up the corpus of the trust and were kept in the vaults of the Guaranty Trust Company. The trust instruments are silent regarding the law to be applied to them. Similarly, the trust instruments are silent as to the actual place of signing of the trust instruments, although the acknowledgments were apparently taken in New York.

The plaintiffs claim that at the time of the creation of said trusts they were, and at the present time still are, Connecticut trusts and that the administration of said trusts should be governed by the laws of the state of Connecticut. The defendant does not know whether said trusts are Connecticut trusts or New York trusts and cannot act with safety with respect to the investment of the assets thereof until it is determined whether such investment is to be governed by the laws of the state of Connecticut or the laws of the state of New York. It is claimed that there is an actual and bona fide substantial question in dispute between the parties and a substantial uncertainty of legal issues growing out of the facts hereinbefore stated, requiring adjudication.

The determination of the question whether the trusts in issue are Connecticut trusts or New York trusts will be resolved in part by the weighing of the following factors: (1) the implied intention of the settlors; (2) the domicil of the settlors; (3) the domicil of the trustee; (4) the domicil of the beneficiaries; (5) the place where the trust instruments were executed; and (6) the location of the trust property.

While in general the validity of a trust of realty has been determined by the law of the situs of the land and the legality of the trust of personalty by the law of the settlor's domicil, there are many opportunities for complications and variations. Among other considerations, the courts are influenced by the nature of the property involved and its location; the domicil of the settlor and the trustee; the situs of the trust administration and whether the question is the legality of the act of trust creation or the rule governing trust administration. There is a tendency to respect the expressed will of the settlor as to the controlling law. 1A Bogert, Trusts and Trustees § 211. The instant trust property is comprised of

choses in action. Technically, a chose in action has
no situs, as it does not have a location in space. How-
ever, for purposes of taxation and transfer and for
most purposes of administration, a situs will be as-
cribed to the ordinary chose in action at the domicil
of the owner. 1 Locke & Kohn, Conn. Probate Prac-
tice §§ 58, 59; 3 id. §§ 24, 25; *Security Mills, Inc.* v.
*Norwich,* 145 Conn. 375.

For transfer tax purposes, intangible personalty
has a situs at the owner's domicil, and the ad val-
orem tax is determined by the situs of the property.
On the other hand, tangibles, such as coins and bank
notes, situated in New York are not subject to the
Connecticut succession tax. *Blodgett* v. *Silberman,*
277 U.S. 1, 18. In the absence of an expressed di-
rection to the contrary, the law of the testator's
domicil will control the administration of a trust,
even though the trustee is a foreign corporation and
has possession of the assets in a foreign jurisdiction.
*United States Trust Co.* v. *Boshkoff,* 148 Me. 134,
141. In the case of a testamentary trust of personal
property, the law of the state of the testator's dom-
icil and of the place of admission of the will to pro-
bate controls the administration of the trusts. *In re
Devoe's Estate,* 118 N.Y.2d 432.

It appears evident then, from the facts of the case
at bar, that it was the implied intention of the settlor,
Eugene W. Stetson, that these trusts be considered
Connecticut trusts and that the investment of the
assets thereof be governed according to the laws of
the state of Connecticut.

To take up the second question in issue, as to
whether the defendant trustee has the power to hold
its own stock, which stock as part of the corpus of
said trust comprised a part of said trust at the time
of the death of Eugene W. Stetson, we must refer
to paragraph eleven of each of the instruments in

question, where the right to retain any of the investments constituting part of the principal of the trusts at the time of the death of the settlor is specifically given to the successor trustee. Section 45-89 of the General Statutes specifically sets forth the proposition that investments as received by the trustee need not be changed.

Wherefore, a declaratory judgment may issue determining (1) that the trusts are Connecticut trusts and are to be construed under the laws of the state of Connecticut; (2) that the defendant may continue to hold its own stock as part of the corpus of said trust; and (3) that the defendant may invest the assets of said trust in accordance with the provisions of § 45-88 of the General Statutes.