COLONIAL BANK AND TRUST COMPANY, CONSERVATOR (ESTATE OF WILLIAM CAVANAUGH) *v.* HELEN MATOFF ET AL.
(6223)
(6238)

BORDEN, O'CONNELL and STOUGHTON, Js.

Argued November 4, 1988—decision released March 28, 1989

*David L. Gussak,* with whom, on the brief, was *Frank Harold Cathcart,* for the appellant-appellee (defendant Jesse Monroe).

*William A. Conti,* with whom was *Albert Vasko,* for the appellant-appellee (plaintiff Franklin G. Pilicy).

*Mark Matasavage,* for the appellee (named defendant).

STOUGHTON, J. The defendant Jesse Monroe appeals from the judgment of the trial court awarding damages to the plaintiff in the total amount of $97,875.72. The plaintiff, Franklin G. Pilicy, administrator of the estate of William Cavanaugh, cross appeals from the judgment rendered against Monroe and also appeals from the judgment of the trial court in favor of the named defendant, Helen Matoff. We find no error in any of the appeals.

On November 24, 1981, Colonial Bank and Trust Company was appointed conservator of the estate of William Cavanaugh.[1] In 1982, Colonial brought this action against Matoff and Monroe, alleging, inter alia, that Matoff had acquired a power of attorney from Cavanaugh through fraud and duress, that both defendants had converted Cavanaugh's money to their own use as fiduciaries, that both defendants had been negligent, and that both defendants had acted recklessly and wantonly. In October, 1982, the plaintiff amended its complaint to allege additional financial details. In May, 1987, the plaintiff amended the complaint to allege that the defendants occupied a position of trust and confidence which they used to influence Cavanaugh unduly to transfer funds to them, and that the defendants had breached a trust in favor of Cavanaugh that was created when they took his assets and promised to use

---

[1] On December 17, 1985, the trial court, *J. Healey, J.,* granted the plaintiff's motion to substitute Franklin G. Pilicy, administrator of the estate of William Cavanaugh, as plaintiff in this case.

his money exclusively for his care. The trial court, *Gill, J.,* ordered a default against Monroe on the issue of liability and ordered a hearing in damages when Monroe appeared on the trial date without counsel ready to proceed to trial. A trial to the court, *McDonald, J.,* commenced on April 22, 1987. The court found that Monroe was indebted to plaintiff in the amount of $77,875.72. It rendered judgment for the plaintiff to recover $77,875.72, plus punitive damages of $20,000 from Monroe. The court also rendered judgment in favor of the defendant Matoff.

Monroe claims the trial court erred in that (1) it allowed the plaintiff to amend his complaint at trial to allege that the defendants had breached a constructive trust and had exercised undue influence upon William Cavanaugh, (2) it concluded that the transfer of Cavanaugh's money created a constructive trust and not an outright gift, (3) it refused to allow a setoff of Monroe's expenses against the amount he owed the estate, and (4) it assessed punitive damages against him.

The plaintiff in his cross appeal claims that the trial court erred in that (1) it allowed Monroe to present evidence after a default had been rendered against him on the issue of liability, (2) it refused to allow the estate's claim for treble damages, and (3) it concluded that Monroe had not exercised undue influence upon Cavanaugh.

The plaintiff appeals from the judgment in favor of Matoff and claims that the trial court erred in that (1) it concluded that Cavanaugh was competent when he gave power of attorney to Matoff and directed her to withdraw money from a savings account, (2) it concluded that Matoff did not exercise undue influence over Cavanaugh, (3) it refused to impose a constructive trust on funds withdrawn by Matoff, (4) it con-

cluded that Matoff had not violated her fiduciary duty to Cavanaugh, (5) it concluded that Matoff had not fraudulently induced Cavanaugh to give her a power of attorney and to withdraw funds from savings, and (6) it concluded that Matoff did not know that Monroe had violated a constructive trust in favor of Cavanaugh.

The trial court found the following facts. William Cavanaugh was eighty-five years old and lived in his own home. Monroe and Matoff were his neighbors. Cavanaugh desired to live in his own home under the care of his neighbors rather than in a convalescent home. To this end, Cavanaugh first executed a power of attorney in favor of Matoff and then transferred all of his monies to Monroe. All of the parties understood that the funds were to be held in trust for Cavanaugh's care and support for life.

The actual transfer of the monies was accomplished in two transactions. On September 29, 1981, Matoff used the power of attorney to withdraw $15,000 from Cavanaugh's bank account. Cavanaugh did not accompany her to the bank. This money was given by Cavanaugh to Monroe to hold for Cavanaugh.

On October 31, 1981, Cavanaugh entered into a contract with Monroe and Matoff. According to the terms of the contract, Monroe and Matoff were to care for Cavanaugh for the remainder of his life, and in return Cavanaugh would leave his estate to be shared equally by Monroe and Matoff. In the second transaction, on November 13, 1981, Cavanaugh, accompanied by Monroe and Matoff, went to Thomaston Savings Bank. Cavanaugh directed Matoff to withdraw $62,875.72 from his savings account and endorsed this check to Monroe. On the same date, Cavanaugh executed a will that left his entire estate to Monroe and Monroe's wife.[2]

---

[2] Matoff was never aware of the true contents of the will and she continued to care for Cavanaugh until his death in January, 1985.

Cavanaugh did not know, however, that at that time Monroe, acting on the advice of his attorney, had decided not to treat their contract as valid.

In order to keep control of the money, and to avoid interference by Colonial, Monroe put the money in a joint account with Matoff in a bank in Great Barrington, Massachusetts. He then transferred the money and placed it in an account solely in his name in a bank in Amenia, New York. Thereafter, Monroe transferred the money back to Connecticut, where, by 1983, he had dissipated the entire amount. He spent the money on himself and on such speculative ventures as a planned water well field and a planned trash to energy plant. In January, 1985, Cavanaugh died.

The court noted that Cavanaugh's physician, his dentist and other witnesses testified that Cavanaugh understood and could carry on intelligent conversations. The court also noted that on November 23, 1981, Cavanaugh's guardian ad litem, who had been appointed by the Watertown Probate Court, reported that Cavanaugh was not mentally incompetent.

The court concluded that the evidence clearly and convincingly established that Cavanaugh was competent when he executed the power of attorney in September, 1981, and when he turned over his money to Monroe in September and November, 1981. It also concluded that the defendants had not exercised undue influence over Cavanaugh in obtaining the money.

The court further concluded that the plaintiff had established by clear and convincing evidence that Cavanaugh did not make a gift of his money to Monroe but that all parties understood that it was to be placed in trust with Monroe for Cavanaugh's lifetime care and support at home. It also found that Monroe wilfully, deliberately and intentionally violated the trust.

The trial court concluded that the evidence clearly and convincingly established that Matoff did not know that Monroe would violate his trust and dissipate Cavanaugh's assets, and that there was no evidence that she received any of the money used by Monroe.

I

### MONROE'S APPEAL

Monroe first claims that the trial court abused its discretion in allowing the plaintiff to amend its complaint at trial. The amended complaint included allegations that a trust had been created in favor of Cavanaugh and that the defendants had exerted undue influence upon him. Monroe asserts that he was prejudiced by the amendment because it shifted the burden to him to disprove the absence of a trust and undue influence.

"The trial court may allow, in its discretion, an amendment to pleadings. *Saphir* v. *Neustadt,* 177 Conn. 191, 206, 413 A.2d 843 (1979); *Wesson* v. *F. M. Heritage Co.,* 174 Conn. 236, 239, 386 A.2d 217 (1978); see Practice Book § 176. Such a ruling can be reversed only upon a clear showing of an abuse of discretion. *Saphir* v. *Neustadt,* supra; *Antonofsky* v. *Goldberg,* 144 Conn. 594, 597, 136 A.2d 338 (1957). Factors to be considered in determining whether there has been an abuse of discretion include unreasonable delay, fairness to opposing parties and the negligence of the party offering the amendment. *DuBose* v. *Carabetta,* 161 Conn. 254, 263, 287 A.2d 357 (1971); *Cummings* v. *General Motors Corporation,* 146 Conn. 443, 449–50, 151 A.2d 884 (1959)." *Jonap* v. *Silver,* 1 Conn. App. 550, 555, 474 A.2d 800 (1984).

The allowance of the amendment by the court was not an abuse of discretion. First, the allegations of breach of trust and undue influence were not unlike the charges of fraud, conversion and duress that were

already at issue. Thus, the amendment did not allege facts that unfairly surprised the defendants. Second, the burden of proof in cases involving undue influence does not shift until *after* a confidential or fiduciary relationship is established. *Cooper* v. *Cavallaro,* 2 Conn. App. 622, 627, 481 A.2d 101 (1984). Thus, the plaintiff initially was required to establish the relationship before the burden shifted to the defendant. The fact that Monroe never objected or asked for additional time in which to prepare a defense to these new allegations also detracts from his claims of prejudice. See *Tedesco* v. *Julius C. Pagano, Inc.,* 182 Conn. 339, 342, 438 A.2d 95 (1980).

The granting of a motion to amend the pleadings is a matter within the discretion of the trial court. To justify a refusal to allow an amendment, it must appear that there was some sound reason for the trial court's exercise of discretion in that matter. *Henry* v. *Klein,* 15 Conn. App. 496, 501, 545 A.2d 575 (1988). We cannot say here that the trial court abused its discretion in allowing the amendment.

Monroe's second claim is that the court erred in finding the creation of a constructive trust in favor of Cavanaugh and in finding that the money was not a gift to Monroe. Monroe rests the first part of this claim on two grounds. First, he claims that there was no fiduciary or confidential relationship between him and Cavanaugh, and that such a relationship is a necessary condition in the establishment of a constructive trust. Second, Monroe asserts that the court's finding that Monroe did not exert undue influence precludes the imposition of a constructive trust.

The court did not find that a constructive trust had been created, but rather it found that a *trust* had been created. The trial court did note, however, that even if it had not found a trust, "the relationship of confi-

dence, trust and expected care which arose between William Cavanaugh and Monroe, and all of the circumstances of the transfer would clearly and convincingly require the court to find a constructive trust for such care and support."

The trial court based its finding of a trust on the fact that "the intent of Mr. Cavanaugh when he transferred the monies to Monroe was that those monies be held in trust for his care and support for his lifetime. Those monies were not, as claimed by Monroe, a gift to Monroe to be used by him as his own." The court also found that Matoff understood the nature of the transaction and that Monroe indicated by his actions that he understood the nature of the transfer "which required retention and control over the monies to guarantee Mr. William Cavanaugh's continued support and care at his home," and that all the parties understood that the money was placed in trust with Monroe for Cavanaugh's lifetime care and support at home.

Whether a trust has been created depends upon the intent of the settlor and of the trustee. *Hansen* v. *Norton,* 172 Conn. 292, 296, 374 A.2d 230 (1977); see also 1 Scott, Trusts (3d Ed.) § 17.1. The trial court's conclusion as to the intent of Cavanaugh and Monroe is amply supported by the evidence and therefore must stand.

Monoe's argument against imposing a constructive trust would fail in any event because a trial court's conclusion that the parties involved had a confidential relationship must stand unless it is unreasonably drawn or involved an erroneous application of law. *Hieble* v. *Hieble,* 164 Conn. 56, 60, 316 A.2d 777 (1972). Given the facts of this case, the trial court was clearly justified in finding that there was a relationship of confidence and trust between Cavanaugh and Monroe.

Monroe's second argument against a constructive trust is equally unavailing even if the court had found a constructive trust. The imposition of a constructive trust is not limited to cases involving undue influence. For example, a constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form, or when a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. *Spatola* v. *Spatola,* 4 Conn. App. 79, 81, 492 A.2d 518 (1985).

We also uphold the trial court's determination that the money was not a gift. The intent of the parties at the time of the transfer is a question of fact; id., 82; and in this case depended in large part on the trial court's assessment of the credibility of the witnesses. The trial court's conclusions were eminently reasonable. There is no merit to this claim.

Monroe's third claim of error is that the trial court erred in refusing to allow him a setoff for the value of services he rendered to Cavanaugh. Monroe argues only that equity and justice require a setoff to prevent the estate from being unjustly enriched. Initially, we note that Monroe failed to plead a right of setoff in his answer. It was Monroe's burden to demonstrate his right of setoff by affirmatively and adequately alleging his claim in his pleadings. Practice Book § 168; *Peters Production, Inc.* v. *Dawson,* 182 Conn. 526, 528, 438 A.2d 747 (1980); *Petti* v. *Balance Rock Associates,* 12 Conn. App. 353, 362, 530 A.2d 1083 (1987). On this basis alone, Monroe was not entitled to a setoff.

Even beyond that, however, we find no error in the trial court's ruling. The trial court found that Monroe had spent all of Cavanaugh's money on himself. The court did find that Monroe had rendered services to

Cavanaugh including supervising the repair of Cavanaugh's home, acting as a companion, and providing him with transportation. The trial court found these services reasonably worth $21,000,[3] but it refused to allow the setoff because Monroe had deliberately and wilfully taken the bulk of Cavanaugh's assets for himself. The court also noted that Monroe had not made a claim for these services against Cavanaugh's estate.

" 'An equitable award may be found to be error only if it is based on factual findings that are clearly erroneous; *Kaplan* v. *Kaplan,* 186 Conn. 387, 391–92, 441 A.2d 629 (1982) . . . ." *Osborne* v. *Osborne,* 2 Conn. App. 635, 643, 482 A.2d 77 (1984). A review of the record discloses that the trial court's factual findings that Monroe had taken the bulk of Cavanaugh's assets were fully warranted. There is no merit to this claim.

Monroe's fourth claim of error is that the trial court erred in awarding the plaintiff punitive damages. He does not argue that the court erred in calculating the amount of punitive damages. Monroe contends that he should not have been assessed such damages because his conduct could not be found to have been reckless and indifferent.

We will not retry the facts or pass upon the credibility of witnesses. The facts found were not clearly erroneous and the trial court's conclusions were legally and logically correct. *Golfin* v. *Plymouth Industrial Development Corporation of Connecticut, Inc.,* 15 Conn. App. 804, 543 A.2d 287 (1988). There is no merit to this claim.

## II

### THE PLAINTIFF'S CROSS APPEAL

The plaintiff's first claim on his cross appeal is that the trial court erred in allowing Monroe to present evi-

---

[3] Monroe did not seek an articulation from the trial court as to how it had arrived at this final figure.

dence at trial after a default had been entered against him. We will not review this claim because the trial court's ultimate decision gave the plaintiff all the relief to which he was entitled. "This court may decide a case only when it presents a live controversy which can be resolved by relief that is within the court's power to grant." *Schroeter* v. *Salvati,* 6 Conn. App. 622, 623, 506 A.2d 1083 (1986). Because we cannot grant the plaintiff further relief, this issue is moot.

The plaintiff's second claim is that the trial court erred in denying his claim for treble damages under General Statutes § 52-564. The plaintiff's complaint did not clearly state that his claim for relief was based upon a statutory remedy. Therefore, the trial court did not err in denying such an award. See *Loewenberg* v. *Tiger Lee Construction Co.,* 1 Conn. App. 303, 306–307, 471 A.2d 665 (1984). In any event, the plaintiff was awarded all the relief to which he was entitled. There is no merit to this claim.

The plaintiff's third claim is that the trial court erred in determining that Monroe did not exercise undue influence upon Cavanaugh. Essentially, the plaintiff asks us to retry the case. This we will not do. *Golfin* v. *Plymouth Industrial Development Corporation of Connecticut, Inc.,* supra. There is no merit to this claim.

## III

### THE PLAINTIFF'S APPEAL

The plaintiff appeals the trial court's judgment in favor of Matoff. Every single issue raised by the plaintiff asks us to retry the facts, or pass upon the weight to be accorded to the testimony, or to assess the credibility of the witnesses. This we will not do. Our task is only to determine whether the judgment of the trial court was clearly erroneous, or if the judgment was con-

trary to law. Id. After a thorough review of the record we conclude that the trial court did not err.

There is no error.

In this opinion the other judges concurred.