[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case, brought to enforce a claimed trust arises out of an embattled and embittered family. Plaintiff and defendant are mother and daughter and the original claimed trustee is the grandmother, now 96 years of age, from whom testimony was taken by way of deposition.
In the happier days of 1955, defendant. Trudy Moore (then known as Turid Holm-Hansen) and recently divorced from George Dietrich was residing in Westport, Connecticut with her parents Oszmond and Bergliot Holm-Hansen, Norwegian immigrants, and her seven year old daughter, plaintiff Lynn Goytizolo, a/k/a Lynn Holm-Hansen, also known as Mary Lou Dietrich. Defendant was employed full-time and her mother Bergliot Holm-Hansen provided care for her granddaughter, the plaintiff. The family sought to acquire property in Southbury which would be fronting Lake Lillinonah once the lake was filled in. Defendant purchased property from John F. Ludorf paying $1,500 for the same and receiving a Warranty Deed, therefor, which deed was dated June 23, 1955 and recorded in Volume 66 pages 32 and 33 of the Southbury Land Records.
Thereafter, on August. 12, 1955, defendant. Turid Holm-Hansen CT Page 4216 conveyed the same property by Quit. Claim Deed to her mother, Bergliot Holm-Hansen "in trust for Lynn Holm-Hansen also known as Mary Lou Dietrich". This deed was duly recorded in Vol. 57 page 534 of the Southbury Land Records on October 1, 1955. Plaintiff claims that this deed created a trust for her benefit and testified that her mother had consistently — until 1987 told her that the property was hers and acted as though the property was plaintiff's. In deposition testimony, Bergliot Holm-Hansen states that defendant had so conveyed it so that "Lynn would have some security — that she just wanted to do something for Lynn". There was no accompanying or separate written trust agreement. Defendant now claims that she conveyed the property to her mother in trust because she was driving without car insurance and could lose the property if sued — and the "trust agreement" was just "to keep her mother honest."
Shortly after purchasing the property, defendant's late father, a distributor for Norge Company, a manufacturer of pre-fabricated cottages, constructed on the disputed real property, two small cottages, investing therein close to $10,000. Oszmond Holm-Hansen died unexpectedly in 1957 or 1958.
By letters to her daughter and others in the 1960's, the recently widowed Bergliot Holm-Hansen conveyed the desire to sell one of the cottages on the entire property but was informed by defendant that Lynn (plaintiff) didn't want the cottages sold. Through the years, defendant paid property taxes on the Southbury property although not being allowed to use the same as deductions on her federal income tax returns after an audit in 1962.
In 1962, defendant had married Jesse Moore, a career army officer and moved out of state thereafter. In 1967, defendant and Jesse Moore had their first of two daughters and Bergliot Holm-Hansen visited them in Texas. During that visit and in other conversations from 1967 to 1973, Jesse Moore attempted to convince Bergliot Holm-Hansen to convey the property to defendant.
In 1971, plaintiff married Enrique Goytizolo and both visited with the defendant and her husband in Texas, shortly after their marriage. There is conflicting testimony concerning conversations in regard to the Southbury property on that visit but the more credible is that defendant affirmed that the property in question was in trust for and intended to be for plaintiff.
In 1973, Bergliot Holm-Hansen was once again visiting with defendant and her husband Jesse Moore, this time in Virginia. At around this time a family member was facing court action in Connecticut. At that time, defendant and her husband, both of whom had been licensed to sell real estate, prepared a Quit Claim Deed on a Connecticut form acquired by Jesse Moore. Believing CT Page 4217 that it would protect the property and safeguard ownership for Lynn, Bergliot Holm-Hansen signed on June 29, 1973 a Quit Claim Deed to defendant Trudy Holm-Hansen Moore "in trust for Lynn Holm-Hansen also known as Mary Lou Dietrich." She also purported to retain a life interest in the property. This deed was acknowledged but not witnessed in Virginia (valid in that state) and was recorded on March 21, 1974 at Volume 118 page 317 of the Southbury Land Records.
Sometime thereafter, plaintiff was informed of the conveyance by defendant but was assured that the trust was still in force and that the Southbury property was held for her and that defendant would pay the taxes on it. In 1981, plaintiff and her husband replaced a roof on one of the cottages and between 1981 and 1987 expended considerable energy and between $40,000 and $50,000 in making needed repairs to the property. In 1981 the defendant wrote to plaintiff acknowledging work that they were doing but warning plaintiff that if she failed or refused to pay for work done on the premises, that a mechanics lien could be placed on the cottages, possibly resulting in the loss of the property. This letter also stated that plaintiff would "either have to pay or have the property sold. . . to cover the amount owed." Repairs to the property were made in reliance upon the property being held in trust for plaintiff.
In 1987, the Moores visited Connecticut from their Texas home and saw the property in its improved state and met with a realtor and others in town. On August 21, 1987, defendant, individually and as Trustee for plaintiff conveyed the Southbury property to her husband Jesse G. Moore, by Quit Claim Deed recorded at Volume 211, page 599 of the Southbury Land Records. There was no mention of a trust or of a reserve life interest in the deed. This conveyance was followed by a Quit-Claim Deed from Jesse G. Moore to defendant, again with no mention of trust or reserved life estate. This deed was also recorded in the Southbury Land Records at Volume 211, page 600.
On August 24, 1987, three days later, defendant wrote to plaintiff setting forth several pages of work to be performed on the cottages. This letter contained some instructions of work to be done by plaintiff but also included some to be contracted for by "Trudy and/or Jesse Moore." However, this letter contained no mention of the conveyance that had taken place three days before.
This court finds that a trust was created in favor of plaintiff which plaintiff is entitled to enforce under Connecticut law and equity. As long as the transfer or properly manifests an intention to create a trust a conveyance of real property to another person "in trust for" a third person will create a trust. Restatement 2d of Trusts, Sections 17, 23 and 32 (1959). The CT Page 4218 1955 instrument was properly recorded. A presumption of delivery of a deed creating a trust arises from the execution and recording thereof. 89 C.J.S. Trusts Section 65 (1955).
The mere use of the words "in trust" does not necessarily establish or indicate an intention to create a trust. 1 Scott, Trusts (3rd Ed.) Section 17., 1. A trust can only be created with intent. Marzahl v. Colonial Bank and Trust Co., 170 Conn. 62
(1975). It must be the intent of both the settlor and trustee that a trust be created. Colonial Bank Trust Co. v. Matoff,18 Conn. App. 20, 287 (1989). The pertinent issue is whether the necessary intent is present. Despite defendant's recent protestations, defendant's previous intent to create a trust through the 1955 conveyance was evidenced in the conveyance itself, the circumstances surrounding the conveyance and the subsequent affirmations and actions of the defendant. Although the "trust" language used in that conveyance does not in and of itself constitute conclusive evidence of the defendant's intent thereby to create a trust Connecticut Junior Republic Assoc., Inc. v. Litchfield, 119 Conn. 106, 114 (1934) when viewed in light of the abundance of evidence presented at trial establishing defendant's intent that title to the Southbury property be held for the plaintiff's benefit, it does constitute the manifestation or external expression of intent necessary to create a trust. Restatement 2d Trust Section 23 (1959). Additionally, defendant. verbally expressed her intentions concerning the trust on several occasions.
Further, concerning the 1973 conveyance to defendant, defendant also affirmed to plaintiff that the conveyance would still benefit plaintiff. Bergliot Holm-Hansen affirmed that that conveyance was made to benefit plaintiff's interest. Defendant played a significant part in preparing the 1973 deed for her mother's signature — but still left in the trust language.
Defendant's testimony that she conveyed the property in trust. to avoid losing it in a law suit resulting from her driving without insurance is not inconsistent with her setting up a trust so that her daughter would have the benefit of the real property. Plaintiff presented considerable evidence that defendant created the trust to provide security for the plaintiff.
Further evidence of defendant's intention to create a trust of the Southbury property in favor of the plaintiff is that with the knowledge or consent of defendant, plaintiff and her husband expended considerable sums of money to refurbish the property from 1981 to 1987.
The trust in favor of plaintiff is enforceable having met requirements under Connecticut's "Statute of Fraud" and of CT Page 4219 provisions of Section 47-20 of the Connecticut General Statutes. It is part of Connecticut's common law from the earliest days that an express trust in real estate may not be proved by parol. Hanney v. Clark, 124 Conn. 140 (1938). Under general common law, however, a deed which of itself is a writing transferring property in trust for a named person without specifying further the purposes of the trust., is a declaration of a passive trust. Of the property for the intended beneficiary which sets forth the terms of the trust in a manner sufficient to satisfy "statute of fraud" requirements. Restatement 2d Trusts, Section 46 (1959). By definition, a passive trust is a trust which requires no active duties on the trustee. 90 C.J.S. Trusts, Section 178 (1955).
Evidence of plaintiff's expenditure on the property in reliance on the trust furthers her position because "although a trust of an interest in land is orally declared and no memorandum is signed, the trust is enforceable if, with the consent of the trustee, the beneficiary . . . makes valuable improvements thereon or irrevocably changes his position in reliance upon the trust." Restatement 2d of Trusts, Section 50 (1959); Hanney v. Clark, supra 147-149 (1938).
Section 47-20 of the Connecticut General Statutes does not bar a trust in this case but is merely for the protection of innocent transferees of property and would not be applicable here.
Therefore, this court finds for plaintiff and exercising equitable powers, orders conveyance of the property to her as the deeds attempting to break the trust were ineffective for that purpose.
KULAWIZ, J.