[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by a complaint dated January 21, 1993. Subsequently, the complaint was revised on December 7, 1993 and June 16, 1994. On June 16, 1994, all of the defendants filed their Answers to said revised complaint. The plaintiffs in this matter are Bruce A. Gay and Bette Ellen Ollero, Co-Trustees of a purported trust created by their father, Lawrence C. Gay, who died on September 10, 1991. The defendants are both Co-Trustees, Bruce A. Gay and Bette Ellen Ollero, Mary E. Gay, the widow of Lawrence C. Gay, and David G. Gay, Jason A. Gay, Justin A. Gay and Mark F. Ollero, all grandchildren of Lawrence C. Gay.
On November 1, 1990, the settlor, Lawrence C. Gay, now deceased, executed and had witnessed a document entitled the Gay Education Travel Living Trust ("GYEDTRLT"). The settlor drafted the document himself. In defining the res of the trust, the document reads as follows:
 I, LAWRENCE C. GAY, presently residing at 106 May Street, Naugatuck, CT 06770-3414, or 1350 Fargo Dr., Melbourne, FL 32940-6905, am the holder of a fireproof metal box in my possession at one of the above residences, do hereby acknowledge and declare that I hold and will hold said box and all my right, title and interest in and to said safekeeping and its contest in TRUST
 1. For the use and benefit of: [the various beneficiaries were then named].
After the settlor's death, no fireproof metal box was located, nor was any safety deposit box discovered in the name of the settlor individually or as trustee, either in the State of Connecticut or the State of Florida.
The settlor reserved the power to revoke the trust and remove the contents from the box. The settlor designated himself as trustee, and his son and daughter as co-trustees in CT Page 9628 the event of his death.
The declaration of trust directs that, upon the death of the settlor, the contents of the box are to be held for the use and benefit of the settlor's wife. The trust does not indicate whether the settlor's wife may invade the principal. The trust document also indicates that the income from the trust is to provide for the education of the settlor's grandchildren and the travel of the settlor's son, daughter, and grandchildren. The trust does not indicate whether the above referenced dispositions are to be consecutive or concurrent gifts. In addition, the trust document provides that if the co-trustees agree, the "outstanding grandchildren" may borrow against the principal for education loans. The term "outstanding" is not defined.
In an effort to locate the fireproof metal box referred to in the subject Declaration of Trust (Exhibit A) the decedent's family members have searched both the Connecticut and Florida residences owned by the decedent individually and as trustee respectively. The plaintiff's attorney has written to all of the local banks in Naugatuck, Connecticut, and those in Melbourne, Florida, seeking to find out if the decedent had any safe deposit boxes or accounts. No safe deposit boxes were found in any of these banks.
Both the son and daughter of the decedent testified that shortly after Mr. Gay executed the Trust Agreement on November 1, 1990, he gave each of them a copy of it. Both children agreed that their father was competent when he drew up the trust agreement, and that it was his signature on said trust agreement. Also, both testified that the decedent wanted to help out with the expenses of his grandchildren's education. Bruce A. Gay, the decedent's son, testified that he believed his father created the trust instrument in order to avoid probating his estate. He stated that the Naugatuck, Connecticut residence was only in the decedent's name because when the family moved to Connecticut from Rhode Island in 1952, the decedent came ahead of the family and that at the closing of said home, only the decedent was present. Likewise, Mrs. Gay was not present when the Florida property was purchased in 1986 or 1987 (See Exhibit 4 where Florida property was purchased on April 12, 1989, in the name of Lawrence C. Gay, Trustee for GYEDTRLT)
The Trust document indicates that the settlor's wife "shall have a LIFE Lease on the property at [Naugatuck, Connecticut]." CT Page 9629 (Emphasis in original.) The document also dictates that "if among the contents of the box held hereunder there be any asset identifiable as having been covered by a declaration of trust in connection with which a beneficiary other than the one named in this trust has been designated, the Co-Trustees of this trust shall assert no claim to such asset but shall promptly deliver the same to the individual name [sic] as Successor Trustee of such other trust."
The settlor died on September 10, 1991, leaving a will, executed on July 5, 1954, which leaves all his property to his wife. The will does not reference a trust. The present trust document and the other documents of ownership for the settlor's assets were found in a file folder in the settlor's closet in his Naugatuck, Connecticut residence. As noted above, no fireproof box was discovered in either location, nor has any other declaration of trust been found among the settlor's personal effects. However, several of the items in the settlor's estate were held by the settlor as trustee for a prior GYEDTRLT trust, such as various mutual fund accounts and the deed to the Florida residence. Among the items held by the settlor as trustee, the majority reference an earlier trust titled the GYEDTRLT of January 25, 1989. Although the deed to the Florida property — which is in the name of Charles Gay, trustee for the GYEDTRLT — does not reference a date of execution for the operative trust, the deed itself is dated 4/12/89, more than a year and a half prior to the execution of the present trust. The deed to the Naugatuck, Connecticut property is held in the name of the settlor, individually, and that deed was found among the settlor's personal documents.
The plaintiffs seek a declaration that the trust is invalid and unenforceable due to a lack of clarity and the presence of irreconcilable ambiguities, and they seek an order distributing to the settlor's estate the settlor's assets which he held as trustee for the purported trust. In the alternative, the plaintiffs seek a judgment instructing them as to whether Mary Gay is entitled to income and/or principal from the trust, whether the grandchildren are entitled to income and principal during the lifetime of the surviving widow, and clarification of the term "outstanding children", whether assets listed on an attachment to the complaint are assets of this trust, whether the real estate at 106 May Street, Naugatuck, Connecticut is an asset of said trust, and if it is, is the LIFE lease pursuant to paragraph #1 of said trust an interest in real estate or is it CT Page 9630 personalty?
"A trust requires three basic elements: (1) a trust res; (2) a fiduciary relationship between a trustee and a beneficiary requiring the trustee to deal with the trust res for the benefit of the beneficiary[1]; and (3) the manifestation of an intent to create a trust. See 1 Restatement (Second), Trust § 2." (Footnote added.) Goytizolo v. Moore, 27 Conn. App. 22, 25,604 A.2d 362 (1992). "It is not necessary, however, that the declaration [of trust] express every element so clearly that nothing can be left to inference or implication, it being sufficient if the donor's general intent and the object thereof are ascertainable by the tribunal provided for that purpose; and where the trust instrument itself provides a definite test whereby the obscurity may reasonably be made certain, the trust is not void." 89 C.J.S., Trusts, § 45(a), p. 787; see alsoDiSea v. Hickey, 160 Conn. 250, 265-66, 278 A.2d 785 (1971).
Connecticut recognizes revocable inter vivos trust. SeeDiSea v. Hickey, supra, 160 Conn. 264. "A trust inter vivos arises . . . when the owner of specific property, without making any transfer, declares that he holds it for the benefit of another. Organized Charities Assn. v. Mansfield, 82 Conn. 504,509; 135 Am. St. Rep. 285 . . ." Danbury National Bank v. Millard,14 Conn. Sup. 174 (1946); see also Linahan v. Linahan,131 Conn. 307, 320, 39 A.2d 895 (1945) ("[N]o transfer of property is necessary where there is a sufficient declaration that one holds property in trust for another.").
"One of the basic elements necessary for the creation of a trust is a manifestation of intention to create it. Effect must be given to the intent which finds expression in the language used." Marzahl v. Colonial Bank Trust Co., 170 Conn. 62, 64,364 A.2d 173 (1976). "A trust is created only if the settlor properly manifests an intention to create a trust." Restatement (Second) Trusts, § 23; see also Colonial Bank Trust Co. v.Matoff, 18 Conn. App. 20, 28, 556 A.2d 619 (1989). The issue of the settlor's intent to create a trust is a question of fact for the trial court. Hartford-Connecticut Trust Co. v. Slater,114 Conn. 603, 612, 159 A.2d 578 (1932); cf. Colonial Bank TrustCo. v. Matoff, supra, 18 Conn. App. 28 (trial court's conclusion as to intent of settlor to create a trust was amply supported by evidence).
It should be noted that it was the settlor's choice to CT Page 9631 utilize the metal box as a means to designate the trust property and, therefore, where the evidence indicates that the settlor did not comply with his own instructions, the conclusion is that the settlor did not chose to give effect to the trust. "If the owner of property executes an instrument purporting to transfer to another in trust such property as he may designate thereafter, the conveyance is incomplete and no trust arises unless and until he designates and transfers the property." Restatement (Second) Trusts, § 26, comment e, p. 74. The settlor specifically defined the scope of the trust to the property that would be found in a metal box in his possession in one of his residences. Therefore, the creation of the trust, as the settlor sought to define it in the declaration of trust, was to be given effect by the act of holding the trust assets, or the certificates of ownership, in a metal fireproof box. Although the settlor had the document executed and witnessed, the court finds that the remaining act necessary for the creation of the trust was never given effect — i.e. holding the assets, or certificates of ownership, in the metal box. Therefore, the court cannot affirmatively find that the settlor demonstrated the necessary intent to give effect to the trust.
This conclusion is supported by the fact that many of the certificates of ownership for the items which appeared to be held in trust — such as the deed to the Florida residence — were found with the settlor's other personal documents in the settlor's closet, indicating that the settlor had not yet obtained the metal box or placed the certificates of ownership in the metal box. In addition, the settlor's wife and family testified that they did not recall the settlor ever having possession of, or mentioning a fireproof metal box, and that the settlor had always kept his personal documents and certificates in a file folder in his closet. Although some assets were held by the settlor as trustee for a GYEDTRLT trust, the certificates of ownership for these assets indicate that they were held under the earlier trust (as noted above), and the present trust before the court expressly refers to an earlier trust and cautions that the assets of the two trusts are not to be commingled. Although the settlor used the present tense in the trust document in order to describe the method of designating the trust property, it would appear from the lack of a metal box and the presence of the certificates of ownership in the settlor's closet file folder that the settlor never designated the trust property under the method required by the terms of the trust. Accordingly, the court finds as a question of fact that the settlor did CT Page 9632 not manifest the necessary intent to give effect to the November 1, 1990 trust as required by the terms of the trust itself. The GYEDTRLT trust of January 25, 1989, is not before the court. If the present trust fails for any reason, the executor of the settlor's estate will have to have the title cleared to the assets held under that earlier 1989 trust, as well.
If the court finds that the settlor demonstrated an intent to create the trust, the court must consider what property the trust encompasses. "It is elementary that there can be no trust without a res, that there must be a definite subject matter.Bassett v. City Bank Trust Co., 115 Conn. 1, 21, [160 A. 69 (1932),] 81 A.L.R. 1488 . . ." Warner v. Merchants Bank TrustCo., 2 Conn. App. 729, 734, 483 A.2d 1107 (1984). The general rule is that the subject matter of the trust must be reasonably ascertainable from facts existing at the time of the creation of the purported trust or the trust is invalid for a lack of a res. See Hartford-Aetna National Bank v. Weaver, 106 Conn. 137, 139,137 A. 388 (1927); 1A Scott on Trusts, Fourth Ed., § 76, p. 440; 89 C.J.S., Trusts, supra, § 45(b); 1 Restatement (Second) Trusts, supra, § 76.
In the present case, the trust document defines the trust res as all of the settlor's right title and interest in the property found in a fireproof metal box. There is support for the validity of a bequest that designates the property subject to the bequest by describing the container in which the property is found. See Restatement (Second), Trusts, § 54, p. 133, Illustration 5 ("A bequeaths to B in trust for C all furniture in A's house, money in bank and securities in A's safe deposit box at the time of his death. The trust is valid."); see alsoCrosby v. Mason, 32 Conn. 482, 486 (1865) ("We see no reason why a testator could not designate the articles which he intends to bequeath to a particular legatee, by pointing out the place where they will be found.") Because no metal box was found, but some property appears to have been held by the settlor as trustee for the GYEDTRLT, the court must review each asset of the settlor's estate to determine if it is a reasonably ascertainable part of the "GYEDTRLT" trust dated November 1, 1990.
In general, "the validity of a trust of realty has been determined by the law of the situs of the land and the legality of the trust of personalty by the law of the settlor's domicil."Stetson v. Morgan Guaranty Trust Co., 22 Conn. Sup. 158, 160, CT Page 9633164 A.2d 239 (1960, citing 1A G, Bogert, Trusts and Trustees, § 211; see also 89 C.J.S. Trusts, § 80 ("The validity of trusts of realty must be determined by the law of the situs of the realty."). However, in Connecticut, the rule is also that "[o]ur courts respect the expressed will of the settlor as to the controlling law." Cantor v. Department of Income Maintenance,40 Conn. Sup. 554, 557, 531 A.2d 608, aff'd. 12 Conn. App. 435,531 A.2d 601 (1987) (applying law of state as designated by settlor in trust document). This rule is in accord with the majority rule. See VA Scott on Trusts (4th Ed.) § 575, p. 201. ("The courts will give effect to a provision in a trust instrument or will that it should be construed in accordance with the law of a particular state.")
In the present case, the settlor included a provision in the trust that the trust was to be enforced in accordance with the laws of both Florida and Connecticut. Accordingly, the court finds that the settlor's stated intent is consistent with the general rule, as indicated above. Accordingly, Florida law would control the validity and effect the trust would have with respect to the real estate located in Florida, and Connecticut law would control with respect to the remaining personalty and real estate.
a. The Naugatuck Residence
The trust document, while indicating that the property in the metal box was to be held for the use and benefit of the settlor's wife, also attempts to create a "life-lease" in the settlor's Naugatuck residence in favor of the settlor's wife following the settlor's death. As noted above, the deed to the Naugatuck property was found among the settlor's personal effects, and was held by the settlor in his individual capacity. However, a declaration that real estate is being held in trust the settlor is sufficient to bring the property into the trust, and the fact that the declaration of trust was not recorded is of no consequence with respect to the parties to the declaration of trust and the parties claiming through such parties. Linahan v. Linahan, supra, 131 Conn. 320. Therefore, the issue is whether the declaration of trust expressed with reasonable certainty whether the house was to be one of the assets of the trust, in which case the settlor's wife is to have a leasehold interest in it for life, or whether this particular clause was merely precatory and did not have any effect. CT Page 9634
Where the words used by the settlor express the settlor's hope and expectation that property is to be used in accordance with expressed desires, the terms are held precatory and do not create a trust absent an expression of absolute intent to create a trust. Fitzgerald v. East Lawn Cemetery, Inc., 126 Conn. 286,289, 10 A.2d 683 (1940).
 "The issue of intent as it relates to the interpretation of a trust instrument . . . is to be determined by examination of the language of the trust instrument itself and not by extrinsic evidence of actual intent." Heffernan v. Freedman, 177 Conn. 476, 481, 418 A.2d 895 (1979). The construction of a will presents a question of law to be determined in the light of facts that are found by the trial court or are undisputed or indisputable. See Connecticut National Bank Trust Co. v. Chadwick, 217 Conn. 260, 266, 385 A.2d 1189 (1991). This court would hold that this same principle would apply to a trust instrument.
The term "life-lease" was recognized by the appellate court to define a lease interest in elderly housing which lasts for the duration of the tenant's life. United Church of Christ v.West Hartford, 9 Conn. App. 448, 458, 519 A.2d 1217 (1987), citing Michigan Baptist House Development Co. v. Ann Arbor,396 Mich. 660, 242 N.W.2d 749 (1976). However, the settlor's use of the term "life-lease" does not, in and of itself, indicate that the clause was not precatory and that the property was to be subject to the trust. Most notably, the deed to the property was found with the settlor's personal documents, indicating that if there is a fireproof metal box, the deed is not in it and, therefore, the Naugatuck property was not held in trust. In addition, the settlor held his other real estate, the Florida residence, as trustee for a GYEDTRLT trust, although it is unclear under which particular version of the GYEDTRLT trust it was held. However, the settlor made no attempt to transfer the Naugatuck property into his name as trustee. Therefore, the court finds that the Naugatuck property is not a reasonably ascertainable part of the present trust.
 b. Investment Funds Held in the Name of Charles Gay, Trustee for the GYEDTRLT
Found among the settlor's personal documents were certificates of ownership for various mutual funds, which were held in CT Page 9635 the name of the settlor as trustee for a GYEDTRLT trust which was dated January 25, 1989, predating the current trust by over a year and a half. As noted above, the current trust contains a clause referencing another trust and cautioning that the funds of both trusts should not be commingled. The present trust, however, does not indicate the title of the prior trust. Also, the certificates of ownership were found among the settlor's personal document, and obviously, were not held in a fireproof metal box, as the settlor sought to define the trust. These facts, when considered together, support the finding that the funds are not reasonably ascertainable as being part of the present trust.
c. The Florida Residence
The deed to the Florida residence was held by the decedent, Lawrence C. a Gay, trustee for an undated GYEDTRLT. However, the date of the deed predates the date of the current trust. It, too, was found among the settlor's personal documents in his closet and, therefore, was not held in a fireproof metal box, as the settlor sought to define the trust. Accordingly, based on these facts, the court finds that the Florida residence is not reasonably ascertainable as being part of the trust of November 1, 1990.
Due to the lack of a metal box and the manner in which the settlor held the various certificates of ownership and deeds, the court finds that the settlor never manifested an intent to give effect to the trust in accordance with its express provisions. In addition, the court finds that the res of the trust is not reasonably ascertainable. Accordingly, the court declares the trust dated November 1, 1990 and entitled "Declaration of a Living or Inter Vivos Trust — GYEDTRLT (Gay Education Travel Living Trust)" is void and without effect. Because the court finds said trust is void, the court need not address the issue of the construction of the other ambiguous provisions of the trust. Further, since the issue of a purported GYEDTRLT Trust dated January 25, 1989 is not before the court, the undersigned can make no finding as to assets which are allegedly part of that purported trust.
/s/ William J. Sullivan, J. WILLIAM J. SULLIVAN