[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO STRIKE #105
The plaintiff, Barbara Dalterio, filed a revised eight count complaint against the defendants, her son and daughter-in-law, Robert Yeagher, Jr. and Marianne Yeagher. Dalterio, by virtue of her complaint, alleges the following: On May 5, 1980, Dalterio transferred to her son, without consideration, three real estate parcels (the property) by quitclaim deed.[1] Dalterio transferred the property to her son, who was unmarried at that time, in order to protect it from potential claims by her spouse. Robert Yeagher, Jr. agreed to accept the property and understood that Dalterio would continue to reside on the property for the remainder of her life, and Robert Yeagher, Jr. repeatedly told Dalterio that she could remain in possession of the property for the remainder of her life. Dalterio has continued to occupy the property and has made significant and substantial improvements to the property.
Dalterio further alleges that on June 16, 1995, Robert, Yeagher, Jr., now married, transferred the property to his wife, Marianne Yeagher, by quit-claim deed, but Robert Yeagher, Jr. remains the equitable owner of the property. Further, Dalterio alleges that Robert and Marianne Yeagher rented a portion of the property to a third party and that they retained the rental fees therefrom. It is also alleged that on August 30, 1999, Marianne Yeagher sold that portion of the property that was rented for $85,000, and Robert Yeagher, Jr. retained the proceeds from that sale. Additionally, Dalterio alleges that Robert Yeagher, Jr., acting through his wife, initiated a summary process action against her, seeking to evict her from the property. Dalterio has repeatedly asked her son to transfer the property back to her, but he has refused to do so. CT Page 9029
On March 9, 2001, Dalterio filed a revised, eight count, complaint against the Yeaghers: counts one, three, four, six and seven are brought against Robert Yeagher, Jr. alleging breach of a constructive trust, breach of a resulting trust, unjust enrichment, breach of fiduciary duty, and breach of an implied contract, respectively. Counts two, five and eight are brought against Marianne Yeagher alleging breach of a constructive trust, breach of a resulting trust and breach of an implied contract, respectively. Dalterio seeks the following relief: a transfer of the title to the property; damages; compensatory damages, including an equitable portion of the proceeds from the sale of one of the parcels; a permanent injunction enjoining Marianne Yeagher from evicting her; and other relief that the court may deem appropriate.
On April 4, 2001, the Yeaghers filed a motion to strike counts one, three, six and eight of Dalterio's revised complaint. In accordance with Practice Book § 10-42, the parties have submitted memoranda in support of their opposing positions.
 A Counts One and Three
The Yeaghers move to strike counts one and three, breach of constructive trust and breach of a resulting trust against Robert Yeagher, Jr., on two grounds. First, the Yeaghers move on the ground that counts one and three are legally insufficient because a cause of action for breach of a constructive or resulting trust does not exist. In the alternative, if the court deems these counts to be claims for the imposition of a constructive and a resulting trust, the Yeaghers move to strike on the ground that counts one and three are insufficient because Dalterio clearly alleges in her complaint that Marianne Yeagher, and not Robert Yeagher, Jr., is the record owner of the property.
As to the first ground of the Yeaghers' motion to strike counts one and three, the court has found several cases where a claim for breach of a constructive trust has been brought in Connecticut. See, e.g., Van Aukenv. Tyrrell, 130 Conn. 289, 291, 33 A.2d 339 (1943) ("[the] essential allegations [of the plaintiffs complaint] set forth a cause of action for the breach of a constructive trust . . ."); Colonial Bank Trust Co. v.Matoff, 18 Conn. App. 20, 556 A.2d 619 (1989) (the trial court did not abuse its discretion when it permitted the plaintiff to amend his complaint to allege breach of a constructive trust); see also PoquonockMobil, Inc. v. Pinkham, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 378551 (February 15, 1996, Koletsky, J.) (explaining that there are differences between a claim to impose a CT Page 9030 constructive trust and a claim that a trustee breached an agreement to hold property in a construct trust, as was the cause of action in that case). Nevertheless, the court does recognize that the imposition of a constructive or resulting trust is an equitable remedy; Wendell Corp.Trustee v. Thurston, 239 Conn. 109, 120, 680 A.2d 1314 (1996) ("[a] constructive trust is a flexible equitable remedy whose enforcement is subject to the equitable discretion of the trial court"); and, as such, it may have been more accurate, technically, for Dalterio to label these counts as a actions to impose a constructive trust and/or a resulting trust, followed by counts that allege breaches of those trusts. Notwithstanding that observation, the complaint clearly sets forth the causes of action and desired relief, regardless of the name under which they have been asserted. If the Yeaghers' desired more clarification of these counts, a second request to revise would have been the appropriate method to obtain that information. See Practice Book § 10-35.
When a court is called upon to "determine the nature of a pleading filed by a party, [the court is] not required to accept the label affixed to that pleading by the party." Home Oil Co. v. Todd, 195 Conn. 333,340, 487 A.2d 1095 (1985). "It is, after all, the facts alleged which determine the cause of action, and not the nomenclature employed."Hartford Accident Indemnity Co. v. Chung, 37 Conn. Sup. 587, 595,429 A.2d 158 (App. Sess. 1981). "As Shakespeare once put it: `What's in a name? That which we call a rose. By any other name would smell as sweet.' Romeo and Juliet, 11:2." Safford v. Pitney Bowes, Inc., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 046452 (April 25, 1995, Comerford, J.).
The Yeaghers also move to strike counts one and three on the ground of insufficiency because Dalterio clearly alleges in the complaint that Marianne Yeagher is the record owner of the property and, therefore, it is argued, a claim to impose a constructive or resulting trust against Robert Yeagher, Jr. cannot be asserted. Dalterio opposes the motion to strike these counts, arguing that equity should not allow the imposition of a constructive or resulting trust to be defeated simply because the constructive or resulting trustee improperly transferred the res to his wife, especially where the trustee remains the equitable owner and has profited from the rental and the sale of a portion of the trust property.[2]
"Where the trustee makes an unauthorized conversion, transfer, or encumbrance of trust property or funds, the beneficiary of the trust may elect to hold the trustee personally liable and accountable for his breach of trust. Liability may be imposed whether such unauthorized transaction is through design or error. . . . The trustee, whether he is the trustee of an express trust or is merely a constructive trustee, CT Page 9031 cannot escape personal liability by showing that he has disposed of the subject of the trust." 76 Am.Jur.2d 311, Trusts § 296 (1992). "[Even] [w]here a person holding property subject to a constructive trust does not exchange the property for other property, he nevertheless holds upon a constructive trust anything received as a result of his holding the property." 1 Restatement (First), Restitution § 205, comment (a), p. 836 (1936).
"The beneficiary of a trust has, in general, an option between following trust property or its proceeds and imposing a constructive trust thereon or recovering damages for its wrongful conversion. . . . [T]he option [as to specific redress in the pursuit of trust property or funds] belongs exclusively to the beneficiary and those authorized to act for him. The beneficiary may elect to take such product or proceeds of a wrongful conversion, including any profit, or insist on an equivalent for the original trust property, where the product or proceeds embrace a loss. . . . A beneficiary may disaffirm an unauthorized sale of trust property or may affirm the sale and elect other redress against the trustee and the purchaser [provided the purchaser is not a bona fide purchaser for value]." 76 Am.Jur.2d 308-09, Trusts § 294 (1992).
"Election to pursue one remedy may waive and bar pursuit of any inconsistent remedy. However, the view has been expressed that if a beneficiary, upon breach of trust, pursues simultaneously, a damages action and an action to recover the specific property taken, his remedies will not be deemed inconsistent so long as double compensation is not had.[3] It should be observed that the wrongdoing trustee and the wrongdoing transferee usually are regarded as jointly and severally liable for the breach of trust." 76 Am.Jur.2d 309, Trusts § 294 (1992); see also 76 Am.Jur.2d 312, Trusts § 297 (1992) (when a constructive trustee improperly transfers the trust property, the transferee, when not a bona fide purchaser for value, "and the original trustee may be held liable and accountable as joint and several trustees . . .").
In the present action, although Dalterio alleges that Robert Yeagher, Jr. transferred his interest in the property to Marianne Yeagher, she also alleges that Robert Yeagher, Jr. remains the equitable owner of the property, and the actions taken by Marianne Yeagher were taken on behalf of Robert Yeagher, Jr., as the equitable owner. Additionally, any value received by Robert Yeagher, Jr., as constructive or resulting trustee, either through the transfer to Marianne Yeagher or via the rental and sale of a portion of the property, would be reachable by Dalterio in accordance with the rule of trust pursuit.[4] If Dalterio can prove that Robert Yeagher, Jr. retained the proceeds from the rental of a portion of the property, or that he retained the $85,000 from the sale of CT Page 9032 a portion of the property, Robert Yeagher, Jr. may be found to hold those proceeds in trust for Dalterio. Further, if it is found that Robert Yeagher, Jr., upon accepting the deed to the property, assumed the role of trustee, the trier of fact may also find that his transfer of the property to his wife was a breach of trust. Accordingly, the motion to strike counts one and three is denied.
 B Count Six
The Yeaghers next move to strike count six, breach of fiduciary duty as to Robert Yeagher, Jr., on the ground that it is insufficient as a matter of law because the complaint clearly alleges that it was Marianne Yeagher, and not Robert Yeagher, Jr., who initiated the summary process against Dalterio and who sold a portion of the property. Dalterio, in her opposing memorandum, does not address this portion of the motion to strike.
Count six of the complaint alleges, inter alia, that Dalterio transferred the property to Robert Yeagher, Jr., and that he remains theequitable owner thereof. Count six also alleges that Robert Yeagher, Jr., acting through his wife, initiated a summary process action against Dalterio. Further, by his acceptance of the deed to the property, it is alleged that Robert Yeagher, Jr. assumed a fiduciary duty to Dalterio, the transferor, but that Robert Yeagher, Jr. breached this duty by attempting to evict Dalterio, by selling a portion of the property, and by retaining the proceeds thereof.
"It is well settled that a fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . In the seminal cases in which [the Supreme Court] has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another." (Citations omitted; internal quotation marks omitted.) Hi-Ho Tower, Inc. v. Com-Tronics, Inc.,255 Conn. 20, 38, 761 A.2d 1268 (2000). In certain types of relationships, such as a partnership or a trusteeship, there automatically exists a fiduciary duty. Citibank v. Gifesman,63 Conn. App. 188, 197, ___ A.2d ___ (2001).
The only ground asserted by the Yeaghers in moving to strike count six is that it is insufficient because Robert Yeagher, Jr. is not the record owner of the property. However, in count six, Dalterio alleges that CT Page 9033 Robert Yeagher, Jr. is the equitable owner of the property. Dalterio also alleges that Robert Yeagher, Jr. breached his fiduciary duty by directing his wife to evict Dalterio, by selling a portion of the property held in constructive trust for Dalterio, and by retaining the proceeds therefrom. The court is not persuaded that the allegation that Marianne Yeagher is the record owner of the property, with the exception of the portion that was sold for $85,000, would, as a matter of law, render this count insufficient when Dalterio also alleges that Marianne Yeagher holds the property for her husband, and her husband, himself, received and retained the proceeds from the sale of a portion of the property. If Dalterio is able to prove the facts alleged: that Robert Yeagher, Jr. assumed a fiduciary duty to Dalterio by accepting the deed to the property and telling her that she could utilize the property for as long as she desired; that, after transferring title but retaining equitable interest, he directed the actions of his wife in relation to the property, i.e., initiating summary process against Dalterio and selling a portion of the property; and that he obtained and retained the proceeds from the sale of the property, the court finds that those alleged facts would be sufficient to sustain a cause of action for breach of a fiduciary duty.
Accordingly, the motion to strike count six is denied.
 C Count Eight
The Yeaghers next move to strike count eight, breach of implied contract as to Marianne Yeagher, on the ground that it is insufficient because Dalterio fails to alleged any facts to support an implied contract, and she merely asserts a conclusion of law. As with count six, Dalterio does not respond to this portion of the motion to strike in her opposing memorandum.
"The claim of breach of an implied contract could be read to allege failure to perform duties imposed either by a contract implied in fact or a contract implied in law, also often called a quasi-contract." Therrienv. Safeguard Mfg. Co., 180 Conn. 91, 94, 429 A.2d 808 (1980); see alsoChotkowski v. State, 240 Conn. 246, 268 n. 26, 690 A.2d 368 (1997). "A contract implied in fact, like an express contract, depends on actual agreement." Id. The agreement forming a contract implied in fact is not expressed in words but is inferred from the acts and conduct of the parties. See id., 94-95; see also Brighenti v. New Britain Shirt Corp.,167 Conn. 403, 406, 356 A.2d 181 (1974).
"Quasi-contracts have often been called implied contracts or contracts CT Page 9034 implied in law; but, unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." 1 Restatement (Second), Contracts § 4, comment (b), p. 15 (1979). "A contract implied in law requires, as a foundation, that there be an obligation created by law that imposes a duty to perform," and the plaintiff must identify the basis from which such a duty is to be implied. Therrien v. Safeguard Mfg. Co., supra, 180 Conn. 95; see also Chotkowski v. State, supra, 240 Conn. 268 n. 26.
"A constructive trust differs from an express trust in much the same way as a quasicontractual obligation differs from a contractual obligation. On the other hand, a quasicontractual obligation and a constructive trust closely resemble each other, the chief difference being that the plaintiff in bringing an action to enforce a quasi-contractual obligation seeks to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money, whereas the plaintiff in bringing a suit to enforce a constructive trust seeks to recover specific property. [It is] [f]or these reasons [that] Constructive Trusts are dealt with together with Quasi Contracts in the Restatement of [Restitution]." 1 Restatement (First), Restitution § 160, comment (a), p. 641-42 (1936).
"An implied [in-fact] contract is an agreement between the parties which is not expressed in words but which is inferred from the acts and conduct of the parties. . . . The test is whether the conduct and acts of the parties show an agreement. . . . In distinction to an implied [in-fact] contract, a quasi [or implied-in-law] contract is not a contract, but an obligation which the law creates out of the circumstances present, even though a party did not assume the obligation, and may not have intended but in fact actually dissented from it. . . . It is based on equitable principles to operate whenever justice requires compensation to be made." (Citations omitted.) Brighenti v. New Britain Shirt Corp., supra,167 Conn. 406-07; cf. Therrien v. Safeguard Mfg. Co., supra,180 Conn. 94-95.
Dalterio alleges, in count eight, that Robert Yeagher, Jr. had an implied contract with Dalterio upon which she placed reliance and that Marianne Yeagher, by virtue of her status as record owner of the property, assumed the existing obligations of her husband when she took title to the property. Dalterio does not allege that Marianne Yeagher was aware of her husband's obligations or that she agreed to accept those obligations.
Although Dalterio appears to be basing this claim on a theory of implied-in-law or quasi contract, count eight of Dalterio's complaint CT Page 9035 does not contain facts that would, if proved, support a cause of action in contract, implied in-fact or in-law. The claim is devoid of any allegations for which an agreement between Dalterio and Marianne Yeagher could be inferred. Moreover, count eight does not contain any facts from which a duty to perform on behalf of Marianne Yeagher could be reasonably inferred. The complaint is devoid of any allegation that she possessed the slightest knowledge of any obligations that her husband may have had toward Dalterio in relation to the property. Accordingly, the Yeaghers' motion to strike count eight of Dalterio's complaint is granted.
In conclusion, the Yeaghers' motion to strike is denied as to counts one, three and six. The motion to strike is granted as to count eight.
Foley, J.